■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN MAY, Appellant.—Judgment, Supreme Court, New York County (Ira F. Beal, J.), rendered September 13, 1989, convicting defendant of criminal possession of stolen property in the fourth degree, unauthorized use of a vehicle in the third degree, and criminal possession of a controlled substance in the seventh degree, and sentencing him to concurrent terms of 2 to 4 years in prison, 90 days and 90 days, respectively, is affirmed.

The facts are accurately stated in Justice Smith's concurring memorandum. The defendant and the People are in agreement that the issue of the legality of the stop of the vehicle was fully litigated at the *Huntley* hearing held on defendant's motion to suppress a statement made to the police, and that this court should decide the issue on the facts

adduced at that hearing. The defendant does not argue that the police acted improperly when they stopped their vehicle behind the stolen Oldsmobile. Rather, he urges that the police acted improperly in ordering him to pull the car over when he started the car and began to pull away from the curb.

The police approached the parked vehicle "to investigate to see if the occupants of the vehicle were okay", or if there was "criminal activity going on inside the vehicle." As noted in the concurring memorandum's statement of facts, the street was described as " 'desolate' ", with neither commercial nor residential buildings in the area. The street was also classified as a " 'precinct condition' " because of the high level of criminal activity centered there, including robberies, drugs and stolen vehicles.* Under these circumstances the police certainly were warranted in making a brief inquiry to see if, for instance, the female passenger was being held against her will, or was possibly the victim of an attempted robbery or sexual assault. After the defendant started the car and began to pull away, obviously in response to the police approach, it would have been irresponsible for the police to simply allow the car to leave, for obvious reasons. As in *People v De Bour* (40 NY2d 210, 220), the encounter here was devoid of harassment or intimidation, and was brief, lasting only a few minutes, with questions circumscribed in scope to the officers' task as radio motor patrolmen (i.e., to produce a license, registration and proof of insurance, which defendant could not produce).

In *De Bour (supra)*, the Court of Appeals held that judicial review of police conduct in a citizen encounter requires weighing the interference such conduct entails against the precipitating and attendant conditions known to the police as the encounter enfolds, and that the permissible scope of police intervention in a citizen encounter must correlate with the degree of the officers' objectively credible belief as to what those conditions indicate. Here, the only reasonable conclusion is that "the level of police intrusion was an appropriate response to the observations and beliefs of the officers involved." *(People v Leung,* 68 NY2d 734, 736; *see, People v Roman,* 167 AD2d 262, *lv denied* 77 NY2d 881.)

We disagree with the conclusion in the concurring memorandum that the defendant was not entitled to a *Mapp* hear-

---

* It is of some interest to observe that on summation at trial defense counsel argued that people went to that street "to smoke crack or to seek privacy."

ing *(Mapp v Ohio,* 367 US 643) simply by virtue of the fact that he had no right to privacy in the stolen car. *People v Wesley* (73 NY2d 351), and other leading cases addressing the "legitimate expectation of privacy" issue, do not support Justice Smith's conclusion in this regard.

In *Rakas v Illinois* (439 US 128), the police searched an automobile in which the defendants were riding, and the prosecution admitted into evidence incriminating items seized as a result of that search. The Supreme Court held that since the defendants asserted no property or possessory interest in the automobile, they had no legitimate expectation of privacy in the particular areas of the automobile that were searched, and so had no constitutional grounds to suppress the seized evidence. *(See, California v Acevedo,* 500 US —, 114 L Ed 2d 619.)

In *People v Wesley* (73 NY2d 351, *supra),* the police searched a house occupied by the defendant's girlfriend, and discovered marijuana and a gun, which were introduced at trial against the defendant. The Court of Appeals stated the central tenet of its holding as follows (73 NY2d, *supra,* at 359): "Placing upon a defendant the burden of asserting an interest in the searched premises at the pretrial stage is fair, sensible and consonant with this court's long-established view that Fourth Amendment rights are personal. While the People will, of course, have some notion before trial of how the defendant's possession of the seized contraband is to be proved, it is after all the defendant alone who actually knows his or her connection with the searched area *(see, People v Gomez,* 67 NY2d 843, 844, *supra).* It is thus neither unjust nor unreasonable to require that the defendant set forth that interest, protected by the rule that such testimony cannot be used to prove the charges."

Similarly, in *People v Ponder* (54 NY2d 160), the Court of Appeals held that the defendant had no reasonable expectation of privacy in his grandmother's home, and so had no grounds for moving to suppress evidence found therein after a warrantless search.

In the case now before us, the evidence was seized from defendant's pocket, not from the stolen automobile, so the principle enunciated in *Rakas (supra), Wesley (supra)* and *Ponder (supra)* with respect to a defendant's reasonable expectation of privacy in an automobile or living premises as a prerequisite to his moving to suppress evidence seized therein, is inapplicable. In other words, the defendant was not re-

quired to assert a reasonable expectation of privacy in the stolen automobile in order to obtain a *Mapp* hearing because it was not a search of the stolen automobile that turned up the cocaine.

We add, in response to Presiding Justice Murphy's dissent, that the police merely directed the driver to pull over after the car was started and began to move away, in response to the police presence, which in the particular circumstances presented raised a reasonable suspicion that the driver had something to hide from the police, i.e. that criminal activity was afoot. Significantly, in *People v Cantor* (36 NY2d 106, 113), the Court of Appeals specifically observed: "Nor was the defendant's behavior furtive or evasive". Here, the defendant's actions were evasive. As previously noted, *supra,* the police acted properly in attempting to make a brief inquiry to see if the female passenger was being held against her will, or was possibly the victim of an attempted robbery or sexual assault. After the defendant started the car and began to pull away, obviously in response to the police approach, it would have been irresponsible for the police to simply allow the car to leave.

The dissent appears to conclude from the fact that the police ordered the car to pull over, that there was an unreasonable and unjustified seizure of the defendant at that point. To the contrary, the police merely exercised their common-law right to inquire, pursuant to which "a policeman is entitled to interfere with a citizen to the extent necessary to gain explanatory information, but short of a forcible seizure". *(People v De Bour,* 40 NY2d, *supra,* at 223.)

Nor was the defendant searched "as a direct consequence" of complying with the order to pull the car over. As Justice Smith noted in his factual recitation, which the majority has adopted, the officers approached the car, and one officer asked for the car's license, registration and insurance card. Defendant could not produce them. The other officer noticed that a towel had been draped over the steering wheel, hiding the fact that the ignition lock had been pulled out and the wiring removed. A check at the scene resulted in a report that the car was stolen. Only then was the defendant arrested and searched.

Our inquiry, as the Supreme Court stated in *Terry v Ohio* (392 US 1, 20) "is a dual one—whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." "And in making that assessment it

is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" (392 US, *supra*, at 21-22.) We have little hesitation in concluding that the conduct of the officers here, measured by the common sense principles enunciated in *Terry v Ohio (supra)*, was entirely appropriate.

Defendant's remaining contentions, that the court's supplemental charge on the meaning of the term "use" when applied to a car was inadequate, and that the sentence was excessive, are without merit. Concur—Carro, Kupferman and Smith, JJ. Smith, J., concurs separately in a memorandum in which Kupferman, J., also concurs; and Murphy, P. J., dissents in a memorandum as follows:
Smith, J. (concurring).

I concur in the affirmance of the conviction in all respects. In my view, however, an even stronger reason for denying the suppression motion without a hearing was the defendant's clear lack of standing to assert that he had a right to privacy in a stolen car. It should be emphasized that the defendant in his motion sought suppression not only of the cocaine found on his person but, more importantly, any evidence of the stolen automobile itself. He was convicted of possession of stolen property in the fourth degree (the automobile), the unauthorized use of a vehicle in the third degree and criminal possession of a controlled substance in the seventh degree.

The facts are essentially undisputed.

On February 16, 1989 the owner of the car, a Delta 88 Oldsmobile, reported it stolen from the front of his house in Queens. He had bought it for $3,200 in December 1988.

On March 8, 1989, sometime after 2:30 A.M., two police officers were in uniform on patrol in a marked vehicle in Manhattan. The officers observed defendant and a female companion seated in an Oldsmobile with its lights out on St. Nicholas Terrace. The area was a "precinct condition" because of a high level of criminal activity including robberies, assaults, drugs and stolen vehicles. The area was also "desolate" and had no commercial or residential buildings.

The officers pulled up behind the car and put on turret lights and a spotlight. The car began to move and the police, using a loudspeaker, told the car to pull over. It did so. The officers approached the car and one officer asked for the car's license, registration and insurance card. Defendant could not

produce them. The other officer noticed that a towel had been draped over the steering wheel, hiding the fact that the ignition lock had been pulled out and the wiring removed. A check on the scene resulted in a report that the car was stolen. Defendant was then arrested. Three vials of cocaine were obtained from his back pocket.

The defendant's main argument on this appeal is that the police unlawfully stopped the car in which the defendant was driving. His other arguments, related to suppression, are that the motion court improperly denied his motion to suppress the cocaine, photographs and any evidence of the stolen automobile without a hearing, and that the police had no reasonable suspicion that he was engaging in criminal activity and thus had no right to stop him.

The motion court did grant defendant's motion for a *Huntley* hearing *(People v Huntley,* 15 NY2d 72 [1965]) and for a *Dunaway* hearing *(Dunaway v New York,* 442 US 200 [1979]). After a hearing the motions were denied.

While defendant's main argument on his motion to suppress physical evidence was that the police had no right to approach or stop the vehicle in the absence of any indication of criminal activity and thus had no reason to find the cocaine on his person, his notice of motion and his request for relief dealt with suppression of the photographs of the car itself and any testimony about the car. Specifically, the notice of motion sought suppression of the physical property recovered from the defendant and his request was for suppression of "[t]hree vials of crack, photos of an allegedly stolen 1984 Oldsmobile, NY License Plate EVP 568." In his brief on appeal the defendant noted that even though the motion to suppress physical evidence had been denied without a *Mapp* hearing, since sufficient evidence of the police encounter had been given at the *Huntley* hearing, the court had been asked "to reconsider appellant's application to suppress the physical evidence, specifically the car, the license plate, photographs of the car, and any other evidence seized from the person of [the defendant]."

The key fact here is that defendant was in a stolen car and had no right to be there. Thus he cannot allege sufficient facts to require a hearing. CPL 710.60 (1) requires that both the grounds of a motion to suppress physical evidence and facts supporting the grounds alleged be stated in a motion to suppress evidence. As part of his burden and of his motion papers, the defendant must show that he has standing.

The fact that a defendant must initially assert a legitimate expectation of privacy, or standing, has been made clear by the Court of Appeals. In *People v Wesley* (73 NY2d 351 [1989]), the Court of Appeals reiterated that a defendant who seeks to suppress physical evidence must first assert personal standing. There it held that a defendant did not have standing to challenge a search of a house which was occupied by his girlfriend. The Court said:

"This analysis is codified in CPL 710.60, which allocates to the defendant seeking suppression of evidence the initial burden of showing sufficient grounds for the motion based on sworn allegations of fact; such grounds necessarily include a showing of standing—that is, a legitimate expectation of privacy in the searched premises.

"Placing upon a defendant the burden of asserting an interest in the searched premises at the pretrial stage is fair, sensible and consonant with this court's long-established view that Fourth Amendment rights are personal. While the People will, of course, have some notion before trial of how the defendant's possession of the seized contraband is to be proved, it is after all the defendant alone who actually knows his or her connection with the searched area *(see, People v Gomez,* 67 NY2d 843, 844, *supra).* It is thus neither unjust nor unreasonable to require that the defendant set forth that interest, protected by the rule that such testimony cannot be used to prove the charges." (73 NY2d, *supra,* at 358-359.)

The absence of any reasonable expectation of privacy in his girlfriend's house in *Wesley (supra)* is similar to the absence of any expectation of privacy in the stolen automobile here. Moreover, the standing issue is one of law and a reviewing court may address it even in the absence of the issue being raised by the People or a concession by the People on the issue. *(People v Vasquez,* 97 AD2d 524 [1983].)

Even prior to *Wesley (supra)* it was clear that a person who was charged with stealing a car did not have standing to suppress the car or photographs of it. 1 LaFave and Israel, Criminal Procedure § 9.1 (d) reads in part as follows: "most courts agree that an occupant of a vehicle cannot be said to have standing by virtue of his presence if he is in possession of a stolen or otherwise illegally possessed or controlled vehicle. It has been argued that this should be so only if the police know they are dealing with a stolen car, but this is unsound, for a person's reasonable expectation of privacy hardly depends upon what someone else knows. While a thief driving a

stolen car thus cannot gain standing as to the car by his wrongful possession of it, that possession does not deprive him of standing he otherwise has. This means that a thief is still entitled to challenge unlawful interferences with his person, and consequently it would be open to him to question a search of the car which was a fruit of his illegal arrest."

This section of LaFave was cited in *People v Gittens* (110 AD2d 908 [1985]) where the court stated, "Because his possession is wrongful, a thief driving a stolen car lacks standing to challenge a search of the vehicle." The court went on to say that a person in a stolen car could challenge the interference with his person and challenge a search of a car as being the fruit of an illegal arrest.

It is clear then that even if the narcotics must be suppressed because of improper interference with defendant's person, neither the stolen car nor the photographs of the stolen car should be suppressed and the conviction for possession of the stolen automobile and for its unlawful use should be affirmed.

Murphy, P. J. (dissenting).

The essential unelaborated facts are that two police officers, while driving through a high crime area in the early morning hours, observed a man and a woman in a parked vehicle. Although there was no indication that the man and woman were engaged in illegal activity, the police approached with their turret lights and spotlights on. The car then began to move, at which point the police ordered the car to pull to the side. It was as a direct consequence of complying with this order that the defendant was searched and found to possess cocaine and certain photographs were taken of the vehicle as to which suppression has been sought.

The majority is apparently of the view that the seizure which occurred was permissible under the Fourth Amendment. In support of this conclusion, the majority reasons that because the officers were justified in making some inquiry they were also entitled to order the defendant to stop and pull to the side of the road. The majority reasons further that because this detention occurred merely to facilitate inquiry, it did not amount to a seizure. Indeed, the majority is of the view that no seizure occurred until some time after the initial detention when the police discovered that the vehicle had been reported stolen.

The majority's analysis suffers from some very basic misconceptions. First, assuming that the police were entitled to

inquire, it does not follow that they were, therefore, entitled to detain the defendant. It is well to recall that "The common-law power to inquire does not include the right to unlawfully seize. The minimum requirement for a lawful detentive stop is a founded suspicion that criminal activity is afoot" *(People v Cantor,* 36 NY2d 106, 114). The question then is not whether there was some ground for inquiry, but whether there was a sufficient predicate for a lawful detentive stop. In response to this single relevant inquiry, the majority seems to adopt two approaches. Initially, the majority argues that there was a basis for a lawful detentive stop and offers in sole support of this conclusion that the defendant's attempt to drive away at the approach of the police "raised a reasonable suspicion that the driver had something to hide from the police, i.e. that criminal activity was afoot." The majority then goes on to argue that, in any event, the stop of the defendant did not at its inception amount to a seizure and that there was, there-fore, no need for a founded suspicion that criminal activity was afoot to render the detention lawful.

The latter majority contention, i.e. that the initial detention of the defendant did not amount to a seizure within the meaning of the Fourth Amendment, is simply untenable. The antiquated notion upon which the majority appears to rely, namely, that nothing short of a formal arrest qualifies as a Fourth Amendment seizure has, of course, long since been decisively rejected. "It is quite plain that the Fourth Amend-ment governs 'seizures' of the person which do not eventuate in a trip to the station house and prosecution for crime— 'arrests' in traditional terminology. It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person" *(Terry v Ohio,* 392 US 1, 16). And, indeed, the courts of this State have, in conformity with the command of *Terry,* recognized· that "[w]henever an individual is physically or constructively de-tained by virtue of a significant interruption of his liberty of movement as a result of police action, that individual has been seized within the meaning of the Fourth Amendment *(Terry* v. *Ohio, supra).* This is true whether a person submits to the authority of the badge or whether he succumbs to force" *(People v Cantor,* 36 NY2d 106, 111, *supra).* Here, it would seem unarguable that when the defendant obeyed the police order to pull the car he was driving to the side of the street, he submitted to the authority of the badge and thereby suffered a Fourth Amendment seizure. Indeed, unless it be supposed that a reasonable person when commanded by a

police officer to stop would think himself free to leave none-theless, there can be no other conclusion but that the defendant was seized from the moment he obeyed the police officers' injunction *(see, United States v Mendenhall,* 446 US 544, 554).

The law is clear both as a matter of constitutional precept and statutory mandate: "Before a person may be stopped in a public place a police officer must have reasonable suspicion that such person is committing, has committed, or is about to commit a crime (CPL 140.50)" *(People v Cantor, supra,* at 112). What then was the basis for the stop of the defendant? According to the majority it was simply that the defendant attempted to drive away as the police approached. This circumstance, claims the majority, justified the inference "that the driver had something to hide from the police, i.e. that criminal activity was afoot." The inference that the majority would draw, however, is not only factually tenuous, but legally impermissible. The failure to submit to police inquiry cannot by itself constitute grounds for a seizure. This is so both because ours is an accusatorial rather than inquisitorial system of justice in which the individual is under no obligation to facilitate his own conviction (US Const 5th Amend; *People v Howard,* 50 NY2d 583, 590), and because under the Fourth Amendment an individual is entitled to be free from detention amounting to seizure unless there is at the outset sufficient cause to support the detention *(see, People v Howard, supra).* Where sufficient cause does not exist, an individual retains what has been aptly described as the "right to be let alone" *(Olmstead v United States,* 277 US 438, 478 [Brandeis, J., dissenting]) and may with impunity refuse to submit to police inquiry, even when the inquiry is appropriate. Thus, it is a "settled principle that while the police have the right to request citizens to answer voluntarily questions concerning unsolved crimes they have no right to compel them to answer" *(Davis v Mississippi,* 394 US 721, 727, n 6).

Plainly, a person's assertion of either his right to refuse to submit to police inquiry or his right to be free of seizures unsupported by sufficient cause, cannot be cited in sole justification of an inference of criminal activity or of an otherwise unsupportable seizure. The claim to the contrary, implicit in the majority memorandum, renders the fundamental rights at issue wholly illusory. Indeed, it would appear that, according to the majority, an individual cannot avoid police inquiry except at the price of inviting seizure. Of course, this radical formulation, so fundamentally at odds with the aforecited constitutional guarantees essential to the maintenance of a

free society, finds no support in controlling decisional law. The Court of Appeals, in language which the majority pointedly fails to address, has in fact held unambiguously that "[a]n individual to whom a police officer addresses a question has a constitutional right not to respond. He may remain silent or walk or run away. His refusal to answer is not a crime. Though the police officer may endeavor to complete the interrogation, he may not pursue, absent probable cause to believe that the individual has committed, is committing, or is about to commit a crime, seize or search the individual or his possessions, even though he ran away" *(People v Howard,* 50 NY2d 583, 586, *supra).*

Here, while the police were perhaps justified in undertaking inquiry given that the car in which the defendant and his companion sat was parked in an otherwise desolate area known for its high incidence of crime, the fact remains that, the officers, on approaching the car, had absolutely no objective basis to infer that criminal activity was afoot. The inference of criminality did not, and as a matter of law could not, thereafter materialize simply by virtue of the defendant's attempted assertion of his right to be free from police intrusion. "[W]here * * * there is nothing to establish that a crime has been or is being committed, flight, like refusal to answer, is an insufficient basis for seizure or for the limited detention that is involved in pursuit" *(People v Howard, supra,* at 592).

The conclusion would seem unavoidable that the seizure of the defendant was undertaken without the predicate required by the Fourth Amendment. The fruits of the search which followed as a direct consequence of this illegal seizure should, therefore, have been suppressed.

Having reached this conclusion, it should be evident that I am unable to discern any merit to the standing argument set forth in the concurring memorandum and agree with the criticisms of that argument set forth in the majority memorandum.