■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EDWARD VOLITON, Appellant.—Appeal by the defendant from a judgment of the County Court, Suffolk County (Sherman, J.), rendered March 9, 1990, convicting him of assault in the second degree (two counts), assault in the third degree, and resisting arrest, upon a jury verdict, and imposing sentence.

Ordered that the judgment is modified, as a matter of discretion in the interest of justice, by vacating the defendant's conviction of assault in the second degree (two counts), dismissing those counts of the indictment, and vacating the sentences imposed thereon; as so modified, the judgment is affirmed.

On November 18, 1987, at approximately 3:00 A.M., two uniformed police officers on patrol in a marked car observed a red Hyundai parked on Davidson Street in Wyandanch. The Hyundai's headlights were on and its engine was running.

There is insufficient evidence to show either that the Hyun-

dai was parked illegally, or that it had been, or was being, operated in violation of any provision of the Vehicle and Traffic Law. The decision on the part of the officers to approach the vehicle was inspired solely by their belief that the surrounding location was a "high-drug area" and that the car was parked near a house which was a "big hangout for drugs and prostitution".

The officer who was driving the patrol car maneuvered it into a position parallel to the suspect Hyundai. The second officer requested that the individual occupying the driver's seat of the Hyundai produce his license, registration, and insurance card. The driver of the Hyundai disregarded this request, gestured to the officer with his middle finger, partially closed his window, and began to drive away.

The first officer thereupon positioned the patrol car in front of the Hyundai, blocking its path. This officer then got out of the patrol car, brandishing his revolver in his left hand and a flashlight in his right hand, and approached the passenger side of the Hyundai. The second officer simultaneously approached the driver's side of the Hyundai. The two officers then apparently allowed an unidentified female to get out of the passenger side of the Hyundai and to leave the scene without further disturbance.

At some point, the second officer, looking through the partially open driver's side window of the Hyundai, saw the Hyundai's driver reach toward the floor of his car. He yelled to his fellow officer who, from his position on the opposite side of the Hyundai, shattered the passenger side window with his flashlight.

The driver of the Hyundai, disregarding the officers' commands to get out of the car, then attempted to maneuver his vehicle out of the impasse which had resulted from the placement of the officers' patrol car. One of the officers was struck by the Hyundai during these efforts by its driver to escape. The other officer then began to shoot.

Three shots were fired altogether, two by the yet uninjured officer and one by the officer who had been slightly hurt. The driver of the Hyundai persisted in his attempts to escape and, in so doing, managed to hit the uninjured officer and knock him down.

The driver of the Hyundai ultimately succeeded in circumventing the patrol car. The officers returned to their vehicle and gave chase. The driver was apprehended some time later and handcuffed. As it turned out, one of the three bullets fired

by the two officers had reached its mark; the driver of the Hyundai had been shot in the arm. The driver was arrested, and identified as the defendant, Edward Voliton.

The defendant argues that the officers were not acting lawfully at the time that they were allegedly injured. We agree, and modify the judgment accordingly.

In arguing that the two officers were performing a "lawful duty" (Penal Law § 120.05 [3]) at the time that they were injured, the People rely primarily on the case of *People v May* (176 AD2d 484). However, the order of the Appellate Division, First Department in that case was reversed by the Court of Appeals during the pendency of this appeal *(see, People v May,* 81 NY2d 725). In accordance with the decision of the Court of Appeals in *People v May (supra)* and with other precedent, we conclude that, under the circumstances of this case, the officers had no right to demand that the defendant produce his driver's license and registration, and that they therefore had no right to detain or to arrest the defendant based upon his refusal to do so *(cf.,* Vehicle and Traffic Law § 401 [4]; § 507 [2]; § 509; *People v Miller,* 149 AD2d 538; *People v Abrams,* 119 AD2d 682; *People v Gonzalez,* 116 AD2d 661).

Under the circumstances of this case, the officers' demand for the defendant's license and registration could not possibly have left the defendant with the feeling that he was free to " ' "disregard the police and go about his business" ' " *(People v Hollman,* 79 NY2d 181, 195, quoting *Florida v Bostick,* 501 US —, —, 111 S Ct 2382, 2386, quoting *California v Hodari D.,* 499 US —, —, 111 S Ct 1547, 1551; *see also, People v Harrison,* 57 NY2d 470; *People v De Bour,* 40 NY2d 210). Thus, the officers' demand for the production of the defendant's license and registration was substantially more than a "request for information" *(People v Hollman, supra,* at 195), which officers may make even in the absence of a founded suspicion of criminality *(see also, People v Williams,* 167 AD2d 236; *People v Liverpool,* 160 AD2d 894). The officers' subsequent attempt to detain the defendant by blocking his car and by displaying and using deadly force, cannot, therefore, be considered lawful *(see, People v May, supra; People v Hollman, supra; People v Harrison, supra; People v De Bour, supra; see also, People v Pizzo,* 144 AD2d 930). The fact that the defendant was present in a car parked in a high crime area did not furnish the level of suspicion needed to justify such a seizure *(see, People v May, supra).*

For these reasons, we vacate those convictions which were

premised on allegations that the defendant acted with the intent to prevent the two officers from performing their lawful duties. Although the weight of the evidence establishes that the defendant in fact intended to prevent the officers first from detaining or arresting him, and then from injuring him, this evidence also establishes that the officers' efforts to detain, arrest, and later shoot the defendant were unlawful at the time the alleged injuries were inflicted. "The police may not forcibly detain civilians in order to question them * * * without a reasonable suspicion of criminal activity, and once the defendant indicated, by pulling away from the curb, that he did not wish to speak with the officers, they should not have forced him to stop without legal grounds to do so" *(People v May, supra,* at 728, citing *People v Martinez,* 80 NY2d 444).

The judgment should be modified by dismissing the two counts of assault in the second degree in the interest of justice *(see, People v Udzinski,* 146 AD2d 245). We have examined the defendant's remaining contentions and find them to be without merit. Thompson, J. P., Bracken, Balletta and Copertino, JJ., concur.