■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v THOMAS H. JOHNSON, Appellant. [599 NYS2d 162] —Mercure, J. Appeal from a judgment of the County Court of Broome

County (Monserrate, J.), rendered December 29, 1989, convicting defendant upon his plea of guilty of the crime of criminal possession of a controlled substance in the third degree.

On February 21, 1989, State Trooper Steven Greene was called to the Del Motel on Route 11 in the Town of Kirkwood, Broome County, to investigate a complaint by the motel manager, Shirley Fitch, that there were several individuals in one of the rooms who did not belong there. Specifically, room No. 15 had been rented for one week at a single occupancy rate by a white male who identified himself as Burt or Bart Bowen. However, according to Fitch, several people were using the room, including a black male, a white male and a white female. While Fitch was being interviewed by Greene, the two of them observed defendant leave room No. 15 and get into a nearby blue Oldsmobile. After determining from Fitch that defendant was not the renter and did not belong in room No. 15, Greene walked outside, made eye contact with defendant, who was driving slowly in the motel parking lot, and gave some kind of a signal for him to stop. According to Greene, his purpose for stopping defendant was to find out who he was and what he was doing at the motel. Upon inquiry by Greene, defendant gave his correct name and indicated that Bart Bowen had lent him the motel room and that he was staying there with his girlfriend. Greene asked defendant if he had any identification and, receiving a negative response, then asked whether he had a driver's license, to which defendant also responded "no". Upon further inquiry, defendant indicated that his driver's license had expired.

At that point, Greene asked defendant to exit his car and wait in Greene's car while he radioed for data on defendant's license. Within a minute or two, the response came back that defendant's license was revoked for a conviction of driving without insurance. Greene then arrested defendant for aggravated unlicensed operation of a motor vehicle in the third degree. A subsequent search of defendant's person and the motel room disclosed a quantity of drugs, forming the basis for an indictment charging defendant with three counts of criminal possession of a controlled substance in the second and third degree. Following Supreme Court's denial of defendant's motion to suppress evidence obtained as a result of his seizure and subsequent searches, defendant entered a negotiated plea of guilty to a single count of criminal possession of a controlled substance in the third degree and was sentenced to a prison term of 5 to 15 years. Defendant now appeals, contending that all evidence seized as the result of the allegedly

impermissible initial stop of his automobile should have been suppressed.

We reject the assumption underlying defendant's entire analysis, that Greene's "stop" of defendant's vehicle was unlawful absent a showing of reasonable suspicion of current criminal activity, and accordingly affirm. In our view, Greene's action did not constitute a traditional highway stop of defendant's automobile; rather, it was far more analogous to the mere approach of an individual in order to request information *(compare, People v Hollman,* 79 NY2d 181, and *People v Green,* 185 AD2d 1009, 1010, *lv denied* 81 NY2d 785, 789, *with People v Ingle,* 36 NY2d 413). Clearly, this was nothing more than a "general, nonthreatening encounter in which [defendant was] approached for an articulable reason and asked briefly about his * * * identity [and] reason for being in the area" *(People v Hollman, supra,* at 191; *cf., People v May,* 81 NY2d 725; *People v Voliton,* 190 AD2d 764). The fact that defendant entered his car and began to drive very slowly through the parking lot before Greene was able to reach him was wholly fortuitous. Also, Greene was himself on foot and utilized no traditional signs of authority, such as the turret light on a police car, a drawn weapon or a barrier or other form of roadblock, in order to bring defendant to a halt *(cf., People v May, supra,* at 727; *People v Ingle, supra).* Notably, it was Greene's testimony, credited by County Court, that he was not certain that he even raised his hand in order to stop defendant.

Under the circumstances, the People sufficiently supported Greene's initial contact with defendant by establishing an "objective, credible reason for the interference" *(People v Green, supra,* at 1010; *see, People v Hollman, supra).* Certainly, Fitch's allegation that unauthorized people were using room No. 15 justified Greene's approach and inquiry as to the identity of defendant, a person who was seen leaving the room, and his reason for being there. Finally, we note that it was only after Greene noticed that defendant was not wearing a seatbelt and defendant failed to produce identification that Greene asked to see defendant's driver's license.

Mikoll, J. P., Yesawich Jr., Crew III and Casey, JJ., concur. Ordered that the judgment is affirmed.