[602 NYS2d 412]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CLIVE SPENCER, Appellant.

Second Department, October 4, 1993

APPEARANCES OF COUNSEL

*Jay H. Schwitzman,* Brooklyn, for appellant.

*Charles J. Hynes, District Attorney* of Kings County, Brooklyn *(Roseann B. MacKechnie, Anthea H. Bruffee* and *Bruce D. Austern* of counsel), for respondent.

**OPINION OF THE COURT**

SULLIVAN, J. P.

At issue here is when may the police stop a vehicle in order to request information.

On May 17, 1989, Kalima Alamin telephoned police regarding an alleged assault which she had previously suffered at the hands of her boyfriend, Dion Bloomfield, who had purportedly struck her in the mouth with a gun. At approximately 11:20 P.M. that night, two police officers in a patrol car picked up Alamin and drove her through a neighborhood frequented by Bloomfield in an attempt to find him. During their patrol, Alamin recognized and pointed out a vehicle belonging to the defendant. She informed the officers that the defendant was a friend of Bloomfield and might know where he was. Accordingly, as found by the hearing court, the officers activated the turret lights of their patrol car and engaged their horn to pull the defendant's vehicle over. To ensure their safety, the officers approached the defendant's automobile from either side with their flashlights lit. Their guns were holstered, and they intended only to inquire of the defendant as to his knowledge regarding the whereabouts of Bloomfield. However, upon reaching the car, and with the flashlights illuminating the interior of the vehicle, one of the officers immediately observed a large clear plastic bag on the floor of the front passenger seat. The bag contained brown and green vegetable matter which the officer believed to be marihuana. He thereupon ordered the defendant and his female passenger out of the car. As the defendant alighted from the vehicle, the officer noticed the butt of a handgun protruding from under the driver's seat. The officer removed the weapon and the marihuana from the vehicle, and the defendant was placed under

arrest after indicating that his female passenger had no connection to the items retrieved from the car.

It is the defendant's contention that the police action in ordering him to stop his vehicle constituted a seizure that was impermissible when measured by constitutional standards, and that this tainted the subsequent discovery and seizure of the marihuana and the handgun. The defendant relies on a narrow reading of certain portions of *People v Ingle* (36 NY2d 413), *People v Sobotker* (43 NY2d 559), and *People v Corcoran* (89 AD2d 696) to establish a bright line rule that would forbid the police from stopping an automobile driven by an identified and acknowledged friend of a suspect for the purpose of asking the driver if he knows the whereabouts of the suspect. We believe that this reliance is misplaced and that under the circumstances of this case, the police action in stopping the defendant's automobile was not a violation of his constitutional or common-law rights. We therefore affirm the conviction.

In one of the seminal cases in this area *(People v Cantor,* 36 NY2d 106, 112), it was said: "Street encounters between the patrolman and the average citizen bring into play the most subtle aspects of our constitutional guarantees. While the police should be accorded great latitude in dealing with those situations with which they are confronted it should not be at the expense of our most cherished and fundamental rights. To tolerate an abuse of the power to seize or arrest would be to abandon the law-abiding citizen to the police officer's whim or caprice—and this we must not do".

This concept was further refined and clarified in *People v De Bour* (40 NY2d 210). In *De Bour,* the defendant contended that, by stopping him as he was walking on the street at 12:15 A.M. and asking him what he was doing there and for identification, the police officers seized him within the meaning of the Fourth Amendment. Such a reading of *Cantor* was rejected. The Court of Appeals distinguished the conduct of the police in *Cantor* (three plainclothes officers surrounded the defendant with revolvers drawn and blocked his vehicle with their own) and *People v Ingle (supra,* at 418 [officers " 'accosted' " and " 'restrained' " a motorist for a " 'routine traffic check' " without any articulable reason]) from that in *De Bour* (the defendant was approached and questioned by two uniformed officers whose conduct bespoke no violent or forcible apprehension). The Court found that "[c]learly then, De Bour was not

seized in the sense that Cantor and Ingle were" *(People v De Bour, supra,* at 217).

Even though the officers in *De Bour* had no articulable reasons that would justify his arrest or seizure, that did not prevent the officers from initiating an encounter with him, as long as the officers' conduct was not arbitrary or the product of a whim, and was reasonable: "The crucial factor is whether or not the police behavior can be characterized as reasonable which, in terms of accepted standards, requires a balancing of the interests involved in the police inquiry" *(People v De Bour, supra,* at 217).

Following a discussion of the companion case of *People v La Pene* (40 NY2d 210), the Court stated: "In evaluating the police action we must consider whether or not it was *justified in its inception* and whether or not it was *reasonably related in scope to the circumstances* which rendered its initiation permissible *(People v Cantor,* 36 NY2d 106, 111)" *(People v De Bour, supra,* at 222-223 [emphasis added]).

The Court of Appeals then set forth its now familiar four-tiered analysis of justifiable police conduct in street encounters. The minimal intrusion of approaching to request information is permissible when there is some objective credible reason for that interference not necessarily indicative of criminality. This is designed to prohibit police conduct that is purely arbitrary, based on a whim or hunch and not "reasonable", i.e., founded on reason.

The nature of the information that the police may seek under this first tier may be identification, destination, or reason for being in the area, that is sought in a brief, non-threatening encounter *(People v Hollman,* 79 NY2d 181, 190-191). If and when the police questioning becomes extended, accusatory, and focuses upon the possible criminality of the person questioned, it has risen to the level of common-law inquiry that must be supported by founded suspicion that criminality is afoot *(People v De Bour, supra,* at 223; *People v Hollman, supra,* at 191-192).

There is no question but that the police officers in the case before us were operating on the first tier of activity as set forth in *De Bour* and *Hollman,* i.e., an approach to the defendant with a request for information based on an objective credible reason for that information. The officers were looking for Dion Bloomfield to arrest him for the felonious assault on Kalima Alamin. Ms. Alamin pointed out the defen-

dant and told them he might know where Bloomfield was. This right to request information to enable police officers to perform their law enforcement duties will "hinge on the manner and intensity of the interference, the gravity of the crime involved and the circumstances attending the encounter" *(People v De Bour, supra,* at 219). In this case the information sought, the whereabouts of Bloomfield, would not adversely impact Spencer. It was not intended to harass Spencer, nor was it based on a whim or arbitrary decision of the officers. Ms. Alamin, the victim and former girlfriend of Bloomfield, told the officers that Spencer was a friend of Bloomfield and might know where he was. Since the officers had probable cause to arrest Bloomfield for a felony, they clearly had a valid reason for approaching Spencer with this inquiry.

While the defendant implicitly concedes that the officers would have had the right to seek this information from him if he was a pedestrian *(see, People v De Bour,* 40 NY2d 210, *supra; People v Hollman,* 79 NY2d 181, *supra),* he contends that stopping his vehicle was a seizure subject to constitutional limitations *(People v Ingle,* 36 NY2d 413, 418, *supra; People v Sobotker,* 43 NY2d 559, 563, *supra),* and that such seizures are only permitted under the third tier of the *De Bour* analysis, that is, a forcible stop and detention of a person which is authorized only when the officer has reasonable suspicion that the person has committed, is committing or is about to commit a felony or misdemeanor (CPL 140.50 [1]; *People v De Bour, supra,* at 223). If the officer reasonably suspects his life is in danger, he may frisk the persons so detained (CPL 140.50 [3]). According to the defendant's contention, the only other permissible stop of an automobile is for a routine check to enforce automobile regulations *(People v Corcoran,* 89 AD2d 696, *supra).* This is an unduly restrictive interpretation of the precedents and does not accurately reflect the law.

In *People v John BB.* (56 NY2d 482, *cert denied* 459 US 1010), the Court of Appeals examined a situation where police were stopping and questioning all persons found on foot or in vehicles in a sparsely populated area that had been subject to a high number of burglaries. While recognizing that the stop of the automobile in which the defendant was riding was a limited seizure subject to constitutional limitations, the Court noted that the essential question is whether the stop of the vehicle and its occupants was an *unreasonable* seizure prohib-

ited by the Constitution. "While this proscription generally forbids any unwarranted intrusion into the private affairs or conduct of any individual, we have noted that there is no absolute right to be free from all official inquisitorial interference however minimally intrusive" *(People v John BB., supra,* at 487; *see also, People v De Bour,* 40 NY2d 210, *supra)*. At the same time, the Court refused to establish any bright line rule, insisting on a case-by-case examination of the *reasonableness* of the police conduct. This determination of reasonableness is to be based on a balancing of the State's interest in the inquiry with the interest of the individual in being free from governmental interference. Most importantly for our consideration herein, the Court stated: "But this does not mean that the broad range of factors relevant for the purpose of constitutional examination can never be analyzed in a manner which leads to the ultimate conclusion that the State may stop an automobile and question the occupants for legitimate reasons" *(People v John BB., supra,* at 487-488).

In affirming the denial of suppression, the Court of Appeals found that the nonarbitrary, nondiscriminatory, and uniform procedure utilized to stop vehicles was reasonable to obtain information concerning the recent burglaries. The Court further pointed out that, while not controlling, the absence of arbitrariness is a critical factor in determining the reasonableness of official investigative activity of an intrusive nature. Also to be considered was the fact that the stop of the subject vehicle was not undertaken with an intent to harass and was based on much more than whim, caprice, or idle curiosity *(People v John BB., supra,* at 488).

The application of the principles enunciated in *People v John BB. (supra)* to the facts of the case before us would indicate that the actions of the officers in stopping the defendant's vehicle were, under all of the circumstances, reasonable and proper. The information sought by the police, the whereabouts of the suspected felon Bloomfield, was properly within their law enforcement duties *(see, People v Hollman, supra,* at 189) and formed a legitimate basis for questioning the defendant *(see, People v John BB., supra,* at 488). Singling out the defendant for stop and questioning was not the result of a uniform procedure as was that of the officers in *John BB.,* but in light of the information they had, there was no need for a broad net approach. Clearly, the stop and questioning of the defendant was not arbitrary. It was not based on mere whim, caprice, or idle curiosity. It was based on information supplied

by the victim of the crime who knew the perpetrator, Bloomfield; knew the defendant; knew that the defendant knew Bloomfield, and believed that the defendant would know where Bloomfield was. It was proper and legitimate investigative technique for the officers to seek to question the defendant regarding Bloomfield's whereabouts. Given the nature of the crimes involved, felonious assault and criminal possession of a weapon, the State's interest in learning of Bloomfield's whereabouts so as to effect an arrest more than counterbalanced the defendant's interest in being free from governmental interference.

There is a marked and critical distinction between this case and those in which the person whose vehicle is stopped is the target of the investigative questioning *(see, People v John BB., supra,* at 489; *People v Sobotker, supra; People v Ingle, supra; People v Harrison,* 57 NY2d 470; *People v May,* 81 NY2d 725; *People v Voliton,* 190 AD2d 764). Such a situation implicates the third tier of the *De Bour* analysis and requires reasonable suspicion to justify a vehicle stop. We are dealing in this case, as we stated earlier, with a simple request for information, the first tier of the *De Bour* analysis, which is governed by the standards set forth in *People v John BB. (supra; see also, People v Holstein,* 154 AD2d 905).

Furthermore, the use of flashlights by the officers to illuminate the interior of the vehicle did not constitute an unreasonable intrusion, and the officers were entitled to seize the weapon and marihuana which were in plain view *(see, People v Baldanza,* 138 AD2d 722; *People v Robinson,* 115 AD2d 411).

Accordingly, the judgment appealed from is affirmed.

EIBER, PIZZUTO and JOY, JJ., concur.

Ordered that the judgment is affirmed.