■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIAM II., Appellant. [717 NYS2d 793] —Peters, J. Appeal from a judgment of the County Court of Tompkins County (Barrett, J.), rendered March 10, 2000, which sentenced defendant upon his adjudication as a youthful offender.

The day following a shooting, an anonymous caller provided the City of Ithaca Police Department in Tompkins County with a physical description of one of the assailants named "Will" and advised that he was accompanied by two Caucasian males. Cautioning that Will was armed with a weapon and in the vicinity of Seneca Street, his description was dispatched to three police officers, one of whom identified a group of individuals meeting the description. He, along with his fellow officers, approached the group in a parking lot and asked the suspect, whom he recognized as Will Cruz, to face his police car so that he could be frisked. Notably, Cruz was dressed in a manner which would not enable him to secret a weapon. A plainclothes officer approached the two Caucasian males and asked them to face his unmarked police car. Defendant, one of the two, was the only individual carrying an object, here a backpack, into which a gun could be secreted. Rather than complying, defendant began to run. Pursued by one of the officers down a stream bed, the officer ultimately drew his gun and directed him to "lay down on his belly with his arms outstretched." Three other officers who had followed the chase also drew their weapons and pointed them at defendant; he was handcuffed and his backpack was searched. While marihuana and drug-related paraphernalia were discovered, no weapon was found.

Following a hearing, County Court found, *inter alia,* that the initial stop of defendant did not violate his constitutional rights, that there was a lawful basis for pursuit and that no excessive force was used. After entering a plea of guilty, defen-

dant was adjudged a youthful offender and sentenced to five years probation. Upon his appeal, the lawfulness of the initial stop, the pursuit and the use of force is challenged.

Mindful that great weight should be accorded to the finding of the suppression court (*see, People v Pugh,* 246 AD2d 679, *lv denied* 92 NY2d 882), we recognize that while an anonymous tip indicating that an unidentified person is carrying a weapon will not, by itself, provide an officer with a quantum of reasonable suspicion to justify intrusive police action (*see, Florida v J.L.,* 529 US 266; *People v De Bour,* 40 NY2d 210), the police were obligated to take some action on this radio call. If police conduct is legally challenged, the People must show that, in view of all the circumstances, the action taken was justified (*see, People v Lypka,* 36 NY2d 210). Because police-citizen encounters are not static situations, facts sufficient to support intrusive police action may develop rapidly at the scene (*see, People v Benjamin,* 51 NY2d 267, 270; *People v De Bour, supra,* at 225).

Here, the record reveals that the officer was justified in believing that one of the individuals being confronted may be armed. Given the facts that came to his attention upon the initial confrontation, his independent observations corroborated the specific information received from the informant both as to the description of the individuals, one of whom was identified as "Will," and their location. The officers approached defendant and his companions without a weapon drawn and, upon a commencement of a frisk of Cruz, defendant took flight. For these reasons, we do not find the initial intrusion unreasonable (*see, People v Salaman,* 71 NY2d 869; *People v Finlayson,* 76 AD2d 670, *lv denied* 51 NY2d 1011, *cert denied* 450 US 931).

As to the pursuit, it was triggered moments after the police, believing that "criminal activity was afoot in that narrowly defined area" (*Illinois v Wardlow,* 528 US 119, 138, n 16 [Stevens, J., concurring in part and dissenting in part]), attempted to frisk a companion. With an objectively credible reason for approaching defendant's companion, and fully recognizing that defendant's flight could not, in and of itself, create a reasonable suspicion of criminal activity justifying pursuit, we find that this conduct, viewed as part of all other attendant circumstances, clearly justified police pursuit (*see, People v Martinez,* 80 NY2d 444; *People v Tyner,* 198 AD2d 627, *lv denied* 84 NY2d 834).

Nor do we find error in the way in which the officers approached defendant after his flight or their handcuffing of him

when finally seized. "Where, as here, police officers find themselves in a rapidly developing and dangerous situation presenting an imminent threat to their well-being, they must be permitted to take reasonable measures to assure their safety and they should not be expected 'to await the glint of steel' before doing so" (*People v Allen*, 73 NY2d 378, 380, quoting *People v Benjamin*, 51 NY2d 267, 271).

For these reasons, we affirm the judgment of conviction.

Rose and Lahtinen, JJ., concur.

Crew III, J. P. (dissenting). We respectfully dissent. As a starting point, we sympathize with those who assert that unprovoked flight is not a mere refusal to cooperate and can hardly be considered as "going about one's business" (*Illinois v Wardlow*, 528 US 119, 124, 125; *see, People v Holmes*, 81 NY2d 1056, 1059 [Bellacosa, J., dissenting]). Nevertheless, given the well-established common-law principles of this State regarding police-citizen confrontations, we are constrained to conclude that the stop and seizure here was unjustified and, thus, suppression of the evidence recovered was mandated.

It is well settled that an investigatory stop must be supported by a reasonable suspicion that the defendant has committed or is about to commit a crime (*see, e.g., People v Leung*, 68 NY2d 734), the same predicate for a common-law inquiry (*see, People v Hollman*, 79 NY2d 181, 191). It is equally well settled that an anonymous tip that a person is carrying a gun is not, without more, sufficient to justify an investigatory stop (*see, Florida v J.L.*, 529 US 266, 271; *People v Gray*, 154 AD2d 301). However, while an anonymous tip, standing alone, has almost no legal significance, it may, when considered in conjunction with other supporting facts, support a reasonable suspicion that a defendant has or is about to commit a crime (*see, People v Salaman*, 71 NY2d 869; *People v Benjamin*, 51 NY2d 267), thereby justifying an investigatory stop. Finally, "[f]light alone * * * even in conjunction with equivocal circumstances that * * * justify a police request for information * * * is insufficient to justify pursuit" (*People v Holmes, supra*, at 1058). It is only where flight is coupled with other observable circumstances indicating that criminal activity is afoot that pursuit becomes permissible (*see, e.g., People v Matienzo*, 81 NY2d 778, 780; *People v Martinez*, 80 NY2d 444, 448).

With these principles in mind, we now review the undisputed facts in this case. An anonymous call was placed to the police asserting that Will Cruz was at a particular location in the company of two other white males (one of whom subsequently was identified as defendant), that he was one of the persons

involved in a drive-by shooting that had occurred two days earlier and that he was armed. Additionally, the caller gave a reasonably detailed description of Cruz. Shortly thereafter, a police officer observed three men not far from the location given by the caller, one of whom matched the description given by the caller. At this point, the police had an articulable reason to approach Cruz, and arguably the other two individuals, to request information regarding, *inter alia*, their identity, their reason for being in that location and their destination (*see, People v Hollman, supra*, at 191). The police clearly had no justification for an investigatory stop.

To the extent that the People argue that the caller's information was so detailed that it demonstrated his or her reliability justifying more intrusive police action, we cannot agree. Quite clearly, an accurate description of Cruz's readily observable location and appearance does not demonstrate that the tipster indeed had knowledge of concealed criminal activity (*see, Florida v J.L., supra*, at 270-271; *see also, People v Elwell*, 50 NY2d 231). Accordingly, when defendant bolted and ran, the officers had no authority to pursue (*see, People v Holmes, supra*).

Finally, to the extent that the People rely upon those cases justifying pursuit based upon rapidly developing circumstances at the scene, we do not believe they are applicable to the facts here. Certainly there were no facts observed by the police justifying a reasonable suspicion that Cruz had transferred a gun to defendant, thereby permitting pursuit. In all of the cases justifying pursuit based upon an anonymous tip, the police observed conduct at the scene making them reasonably suspicious of criminal activity (*see, e.g., People v Sierra*, 83 NY2d 928; *People v Matienzo, supra; People v Martinez, supra*). No such observations were made here. In sum, the police had an anonymous tip that Cruz was armed giving them the right to approach the three individuals for a request for information but not the right to make an investigatory stop. There is no evidence that anything else occurred except that defendant fled and, thus, the police had no authority to pursue. Mugglin, J., concurs. Ordered that the judgment is affirmed.