*328 OPINION OF THE COURT
Paula J. Hepner, J.
In accordance with sections 330.2, 332.1 (7) and 332.2 of the Family Court Act the respondent moved to suppress physical evidence, pursuant to Mapp v Ohio (367 US 643 [1961]), on the grounds that the stop, seizure, search and arrest of the respondent were without probable cause. After oral argument the court granted the respondent’s motion for a Mapp hearing.
Findings of Fact
At 10:34 p.m. on August 10, 2001 Police Officer Anna McHenry was on patrol with her partner, Police Officer Taylor, when they received a radio run stating that one of two males walking down Church Avenue had a gun. In the radio run the two males were described — one wearing a white tee shirt and the other wearing a grey tee shirt. Each of them was said to have his hair in braids. The source of the information in the radio run was not identified.
Officer McHenry and her partner drove down Church Avenue toward East 42. On the passenger side of the patrol car at the corner of East 43 Officer McHenry observed two black males walking toward her. One wore a white tee shirt and the other wore a grey tee shirt. Both of the males had their hair in braids. Officer Taylor drove the front tires of the patrol car up onto the curb to block the crosswalk in front of the two males. As they did, Officer McHenry saw the male in the white tee shirt put his hand to his waist and act like he was pushing something down inside. The male in the grey tee shirt was walking away. Officer McHenry and her partner got out of the police car. Although they knew they were approaching an individual who might be armed, their guns were not drawn. Officer McHenry “grabbed” the maid in the grey tee shirt and her partner “grabbed” the male in the white tee shirt. Each individual was placed up against the car. Officer Taylor patted down the male in the white tee shirt while Officer McHenry held the male in the grey tee shirt and watched. Officer Taylor yelled out, “Gun” and retrieved a gun from the respondent’s waistband.
Conclusions of Law
The respondent contends he is entitled to suppression of the physical evidence because the police officers lacked reasonable suspicion that he had committed, was committing or was about to commit a crime, much less probable cause to arrest him. Because the police did not have probable cause to arrest the re *329 spondent or reasonable suspicion to detain him, the respondent argues the property recovered by the police should be suppressed as a fruit of the poisonous tree. (Wong Sun v United States, 371 US 471 [1963]; People v Rossi, 80 NY2d 952 [1992], rearg denied 81 NY2d 835 [1993].) The respondent also maintains that because the police action was initiated based upon an anonymous tip containing a sparse description, the property recovered must be suppressed because the police exceeded the permissible level of intrusion under People v De Bour (40 NY2d 210 [1976]).
The presentment agency opposes suppression and asserts that the police officer had specific and articulable reasons to believe that a crime had been committed and reasonable suspicion to pursue and “temporarily detain” the respondent for further investigation. The presentment agency argues the “reasonable suspicion” is premised not only on the radio run but also on the gesture Officer McHenry observed the respondent make.
The facts are that while still seated in the patrol car with her partner sitting between her and the approaching respondent, Officer McHenry testified she saw the respondent make a gesture that “looked like he was pushing something down” inside his pants. She was never questioned about the details surrounding this observation such as her field of view at the time of her observation, whether there were any obstructions to her sight lines, the presence or absence of light on the respondent as she watched the gesture, the distance he was from her, the degree of attention she gave to the respondent at that time, how long the observation took, etc., so the accuracy, reliability and credibility of her observation was not called into question.
In a hearing to suppress physical evidence under Mapp v Ohio the presentment agency has the burden of going forward to show the evidence it seeks to introduce was acquired in a legal manner. (People v Baldwin, 25 NY2d 66, 70 [1969]; People v Malinsky, 15 NY2d 86, 91 [1965].) Once the presentment agency makes such a showing, the burden shifts to the respondent who must prove, by a preponderance of the evidence, that the police action violated the individual’s constitutional rights and, therefore, the evidence should not be used against him. (People v Berrios, 28 NY2d 361, 367 [1971].)
In People v Cantor (36 NY2d 106, 112 [1975]), the Court of Appeals held that before a person may be stopped, the police must have a reasonable suspicion that the person is committing, has committed or is about to commit a crime. “Reasonable *330 suspicion” was defined by the Court as “the quantum of knowledge sufficient to induce an ordinarily prudent and cautious [person] under the circumstances to believe criminal activity is at hand.” (People v Martinez, 80 NY2d 444, 448 [1992] [internal quotation marks omitted]; People v Cantor, supra at 112-113.) The Court went on to say that in order “to justify such an intrusion, the police officer must indicate specific and articulable facts which, along with any logical deductions, reasonably prompted that intrusion.” (Id. at 113.) Reasonable suspicion will not be justified by a vague or unparticularized hunch (People v Sobotker, 43 NY2d 559, 564 [1978]), and neither will “equivocal or innocuous behavior” that is susceptible of an innocent as well as culpable interpretation generate a founded suspicion that criminal activity is afoot. (People v Carrasquillo, 54 NY2d 248, 252 [1981].) Once reasonable suspicion is established, the court must determine whether the police action was justified at its inception and whether or not it was reasonably related in scope to the circumstances which rendered its initiation permissible. (Terry v Ohio, 392 US 1, 19 [1968].) The facts and circumstances unique to each particular case will determine whether the police action was reasonable.
In the year following Cantor, these principles were incorporated by the Court of Appeals into the standards established in People v De Bour (40 NY2d 210 [1976]), for courts to use in considering whether or not a particular police action is reasonably related in scope to the circumstances which triggered it.[1] “Each progressive level, however, authorizes a separate degree of police interference with the liberty of the person approached and consequently requires escalating suspicion on the part of the investigating officer.” (People v Hollman, 79 NY2d 181, 185 [1992]; People v Spencer, 193 AD2d 90 [2d Dept 1993], appeal granted 82 NY2d 931 [1994], revd 84 NY2d 749 [1995], cert denied 516 US 905 [1995].) The power to forcibly stop and detain a suspect includes authority to effect a temporary investigative detention of a short duration. The First Department defined “a proper temporary detention” as “one where a reasonable, innocent person would understand that he was be *331 ing briefly detained in order to quickly obtain information either confirming or dispelling the officers’ suspicion.” (People v Robinson, 282 AD2d 75, 79 [1st Dept].)
Turning to the evidence in the record, the presentment agency has demonstrated that the respondent, at 10:34 p.m. on the evening of August 10, 2001 was in possession of a firearm. The issue before this court is whether they have shown that the evidence was obtained in a legal manner, that is to say, within the permissible levels of police intrusion authorized under De Bour since the police actions were premised upon an anonymous radio call.
In People v Salaman (71 NY2d 869, 870 [1988]) the Court of Appeals began its analysis of whether a frisk of an individual based upon an anonymous tip[2] would provide a “sufficient predicate for [an] officer’s interference with defendant,” and held that, “[a]ny inquiry into the propriety of police conduct must weigh the degree of intrusion it entails against the precipitating and attending circumstances [citing People v De Bour, supra], and where the officer is justified in believing that the suspect is armed, a frisk for weapons is permissible [citing Terry v Ohio, supra]).” Looking at the precipitating and attendant circumstances, the Court found that the frisk was justified as a matter of law because the officer’s “independent observations corroborated the information received, both as to the specific description of the suspect and as to the exact location where he could be found” and because the officer “approached defendant without any weapon drawn and conducted only a pat down of defendant’s outer clothing.” (Id.)
These have been the guiding principles applied by New York courts in reviewing police actions based on anonymous tips since 1988. However, in deciding whether “an anonymous tip that a person was carrying a gun [is], without more, []sufficient to justify a [police officer’s] stop and frisk” of that person (Matter of Koleaf J., 285 AD2d 418 [1st Dept 2001]), the United States Supreme Court revisited the line of stop and frisk cases beginning with Terry v Ohio (supra), and held that “an anonymous tip lacking indicia of reliability of the kind contemplated *332 in Adams [v Williams, 407 US 143 (1972)] and Alabama [v White, 496 US 325, 332 (1990)] does not justify a stop and frisk whenever and however it alleges the illegal possession of a firearm.”[3] (Florida v J.L., 529 US 266, 274 [2000].)
In Florida v J.L. (supra at 268), the anonymous caller reported “that a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun.” Two officers went to the bus stop “about six minutes later and saw three black males * * * one [of whom] was wearing a plaid shirt.” {Id. at 268.) One of the officers frisked the person wearing the plaid shirt and removed a gun from his pocket. Central to the Supreme Court’s reasoning is the reality that “[ujnlike a tip from a known informant whose reputation can be assessed and who can be held responsible if [the] allegations turn out to be fabricated * * * an anonymous tip alone seldom demonstrates the informant’s basis of knowledge or veracity.” (Id. at 270 [internal quotation marks omitted].) The Supreme Court held that “[t]he reasonableness of official suspicion must be measured by what the officers knew before they conducted their Search” and said of the tip in J.L. that “[a] 11 the police had to go on * * * was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J.L.” (Id. at 271.) In the fact pattern of J.L., the “officers did not see a firearm, and J.L. made no threatening or otherwise unusual movements.” (Id. at 268.)
Under J.L., to contain “sufficient indicia of reliability,” the Supreme Court held that while “[a]n accurate description of a subject’s readily observable location and appearance * * * will help the police correctly identify the person whom the tipster means to accuse, [s]uch a tip does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person.” (Id. at 272.) Since the anonymous call in J.L., unlike the tips in Williams and White, provided no *333 “predictive information and therefore left the police without means to test the informant’s knowledge or credibility” {id. at 271), the Supreme Court affirmed the Florida Supreme Court’s suppression of the gun because the anonymous tip lacked any indicia of reliability.
After the decision in J.L., New York courts began to reevaluate the Salaman precedent and to assess anonymous tips according to the criteria set forth by the Supreme Court, that is, looking to see whether the information shows “ ‘that the tipster ha[d] knowledge of concealed criminal activity’ ” or furnished any “predictive information” concerning the suspect’s movements. {People v Ballard, 279 AD2d 529, 530 [2d Dept 2001] [suppression granted on an anonymous tip stating that a black male, who was wearing blue jeans and a multicolored sweater, and who was walking on Central Avenue in Queens, was carrying a black plastic bag containing a gun]; People v Folk, 284 AD2d 476 [2d Dept 2001] [suppression granted on an anonymous tip consisting of a detailed description of the physical, visible characteristics of an individual claimed by “an unaccountable informant” to be present at a certain place at a certain time and having a gun]; see also Matter of Koleaf J., supra.)
Testing the anonymous call in the case at bar by these criteria, it contains none of the indicia of reliability required by the Supreme Court in J.L. and adopted in the evolving case law in the Second Department. The radio run from an unidentified caller reported a clothing description of two males, a hair style for the two males and a location. The report neither explains how the caller knew about the gun nor supplied any basis for believing s/he had inside information about the respondent. Since no future actions were predicted, the report’s reliability cannot be enhanced by the suspect subsequently engaging in the forecasted behavior. When the officers arrived at the scene with only the information contained in the report, they had at most a founded suspicion that criminal activity was afoot giving them the common-law right to inquire short of forcible seizure.
Turning to the question of whether the reliability of the anonymous report could have been validated by the independent observations made by the officers of a furtive gesture, a suspicious bulge, or the outline of a gun, the unchallenged facts are that Officer McHenry, while inside the patrol car, saw the male in the white tee shirt put his hand into his waist and act like he was pushing something down inside. Under De Bour *334 (supra) and People v Benjamin (51 NY2d 267, 270 [1980]), seemingly still good law in the wake of J.L., the permissible level of police intrusion can escalate as “factors rapidly developing or observed at the scene” are encountered. (People v William II, 279 AD2d 648 [3d Dept 2001].) Upon seeing the gestures made by the male in the white tee shirt, the permissible level of police intrusion under De Bour rose to reasonable suspicion with the right to forcibly stop and detain a person and the right to conduct a limited pat-down frisk since the report already created a suspicion that the person was armed and the gesture observed was consistent with that possibility. While the movement Officer McHenry described could be viewed as “equivocal or innocuous behavior,” and is “susceptible of an innocent as well as culpable interpretation,” when considered in conjunction with the radio call, the court finds the police action was justified at its inception and was reasonably related in scope to the circumstances which rendered its initiation permissible.
Accordingly, the presentment agency has met its burden of going forward to demonstrate probable cause for the respondent’s arrest and detention and the property the presentment agency seeks to introduce was acquired in a legal manner. The respondent has not demonstrated, by a preponderance of the evidence, that his constitutional rights were violated. The motion to suppress the property is denied.

. The Court of Appeals identified four levels of police intrusion and set forth the factors to justify each: (a) approach to request information/some objective credible reason for the interference; (b) common-law right to inquire (short of forcible seizure)/founded suspicion that criminal activity is afoot; (c) forcible stop and detention (and limited pat-down frisk if there is a suspicion that the person is armed)/reasonable suspicion that a particular person has committed, is committing or is about to commit a crime; and (d) arrest/probable cause to believe the person committed a crime.

. The police in Salaman received a report of “a black male with a gun at South Fifth Avenue and West Third Street in the City of Mount Vernon wearing a long beige overcoat and a maroon sweatshirt with a hood on it.” (Id.) The officer found 25 people at the location specified but only the defendant matched the description given. The officer approached the individual, “ordered him to put his hands on the hood of the car and conducted a pat down of defendant’s outer clothing” where he found a gun. (Id.)

. In Alabama v White (supra at 332), the anonymous tip contained information predicting the suspect’s future actions which, upon continued police observation, proved to be accurate. Because the tip contained “[k]nowledge about [the suspect’s] future movements indicating] some familiarity with that person’s affairs” (J.L. at 271), the Supreme Court said it became “reasonable to think the tipster had inside knowledge about the suspect and therefore to credit his assertion about the cocaine.” (Id. at 270.) In Adams v Williams (supra at 146), the tip came from an informant who was known to the police officer personally and had provided information to him in the past.