OPINION OF THE COURT
Wachtler, J.
In response to a series of burglaries committed in a remote rural region, the local police stopped vehicles traveling in the area. The stops were conducted in a uniform, nonarbitrary and nondiscriminatory manner for the purpose of ascertaining the identity of the occupants and obtaining information regarding the criminal activity. The question on this appeal is whether these stops violate the constitutional proscription against unreasonable searches and seizures.
*486 On December 19,1978 the New York State Police discovered that approximately 40 burglaries of vacant summer homes had occurred in the sparsely populated area of Sullivan County’s Anawanda-Tennanah Lake region. Investigator Connors began surveillance of the area on December 21 with the expressed intent of stopping all of the vehicles that he found and interviewing all people in the general vicinity of the lake.
At about 9:30 p.m. on the same day, defendant Stephen CC.’s automobile was stopped by Connors’ unmarked parked police cruiser and two other police vehicles.
In response to a demand for his driving license and automobile registration, defendant Stephen CC. exited from the car to produce the requested documents. Connors then looked inside the open car door with his flashlight and observed a rifle case protruding from under the front seat as well as several flashlights lying on the floor of the vehicle. Connors seized the rifle case, opened it and discovered that it contained a pellet gun. One of the officers recalled that a pellet gun had been reported stolen from one of the nearby cottages.
Defendant Stephen CC., when asked where he obtained the gun, responded that he bought it from a friend along with a pair of audio speakers which were in the trunk. He could not, however, remember the name of the friend who had sold him the items. Since speakers had also been reported stolen from one of the burglarized cottages, the trunk was opened without Stephen CC.’s consent and the speakers were seized. The other three passengers in the car, including defendant John BB., responded to interrogation regarding their activities in the area with conflicting statements.
Both defendants were taken to police headquarters, waived their rights, and confessed to the commission of several burglaries. After being indicted on multiple counts of burglary in the second degree (Penal Law, § 140.25, subd 1), defendants moved to suppress their confessions and the evidence seized from Stephen CC.’s vehicle on the ground that the initial stop of the vehicle was not grounded upon reasonable suspicion of current criminal activity and *487 was therefore unconstitutional. Following denial of that motion defendants pleaded guilty to four counts of attempted burglary in the second degree (Penal Law, §§ 110.00, 140.25, subd 1) and were adjudicated youthful offenders. The Appellate Division upheld the validity of the roving roadblock and affirmed the judgment of the court below. We agree with the Appellate Division’s determination that the procedure employed by the police was constitutionally permissible and therefore affirm.
The defendants are correct in their contention that the Constitutions, both Federal and State, protect an individual from unreasonable searches or seizures conducted by law enforcement officials. And although not every encounter of an inquisitorial nature rises to the level of a seizure within the meaning of the constitutional language, it cannot be disputed that the stop of Stephen CC.’s automobile was at least a limited seizure subject to constitutional limitations (Delaware v Prouse, 440 US 648; People v Ingle, 36 NY2d 413).
The question then is whether the stop of the defendants was the type of unreasonable seizure prohibited by the Constitution. While this proscription generally forbids any unwarranted intrusion into the private affairs or conduct of any individual, we have noted that there is no absolute right to be free from all official inquisitorial interference however minimally intrusive (People v De Bour, 40 NY2d 210). The indefiniteness of the term “unreasonable” militates against the construction of a general rule of universal application for determining the validity of official intrusions of this nature. Rather, the facts of each case must be examined and the essential inquiry is whether the police conduct may be characterized as reasonable, which in turn requires a balancing of the State’s interest in the inquiry at issue against the individual’s interest in being free from governmental interference (Delaware v Prouse, 440 US 648, supra; People v De Bour, 40 NY2d 210, supra).
We recognize that the obvious impact of stopping the progress of an automobile is more intrusive than the minimal intrusion involved in stopping a pedestrian (People v De Bour, supra; cf. People v Cantor, 36 NY2d 106). But this does not mean that the broad range of factors relevant for *488 the purpose of constitutional examination can never be analyzed in a manner which leads to the ultimate conclusion that the State may stop an automobile and question the occupants for legitimate reasons.
The evidence as developed at the suppression hearing establishes that the determination of the police to stop Stephen CC.’s vehicle was made pursuant to a nonarbitrary, nondiscriminatory and uniform procedure, involving the stop of all vehicles located in the heavily burglarized area, in order to facilitate the concededly legitimate function of acquiring information regarding the recent burglaries. The remote, sparsely populated area subject to surveillance was too large to permit any meaningful utilization of traditional investigative procedures, and the roving patrol was limited to stopping vehicles located in the region in which there had been a large number of burglaries. Under these circumstances the momentary inconvenience inevitable in this police confrontation cannot be said to be unreasonable.
The record before us demonstrates that the stop of Stephen CC.’s vehicle was not undertaken with an intent to harass and was based on much more than the mere whim, caprice, or idle curiosity of government officials. Although not controlling, the elimination of the element of arbitrariness has been identified time and again as a critical factor in determining the reasonableness of official investigative activity of an intrusive nature (e.g., United States v Martinez-Fuerte, 428 US 543, 554; People v De Bour, 40 NY2d 210, supra; People v Ingle, 36 NY2d 413, 419, supra). For this reason, too, the cases relied on by defendants, involving official intrusion of a random and discriminatory nature, are inapposite (United States v Brignoni-Ponce, 422 US 873; People v Sobotker, 43 NY2d 559). In fact, in United States v Martinez-Fuerie (428 US 543, supra), the Supreme Court held that nonrandom checkpoint border stops do not violate the Fourth Amendment because they present no potential for unlimited interference with the use of the highways subject only to the unbridled discretion of government officials. For similar reasons we hold that the Fourth Amendment does not prohibit the police from em *489 ploying a roving roadblock in a uniform and nondiscriminatory manner in a sparsely populated area in which there has been a recent series of burglaries.*
 Defendants also contend that even if the initial stop and request for information were proper, the subsequent seizure of the pellet gun and speakers was prohibited. This claim is without merit. The rifle case was in plain view and Investigator Connors acted reasonably in seizing the case and examining its contents for the protection of himself and the other officers. The pellet gun was then identified as potential contraband and this fact, combined with the conflicting explanations offered by the occupants of the vehicle and Stephen CC.’s own statements about the speakers, also known to be reported stolen, supplied the necessary exigency and probable cause to believe that the vehicle contained additional contraband, thereby justifying the warrantless opening of the vehicle’s trunk compartment (United States v Ross, 456 US_, 50 USLW 4580 [June 1, 1982]; People v Kreichman, 37 NY2d 693).
We have reviewed the various other contentions raised by defendants on appeal and find that they, too, are without merit.
Accordingly, the order of the Appellate Division should be affirmed.

 None of the cases cited by the dissenter prohibit the execution of an investigative procedure which is characterized and circumscribed by its uniform and nondiscriminatory nature and which therefore eliminates any element of arbitrariness in the decision to apply the procedure to a particular vehicle or individual. Indeed without exception the cases decided by this court which are relied upon by the dissenter involve the seizure of one particular individual or automobile upon whom an investigation had already focused. In each case the seizure was held improper because it was based upon neither probable cause nor reasonable suspicion of criminal activity (People u Sobotker, 43 NY2d 559 [sole automobile stopped in vicinity where several burglaries were recently reported]; People v Cantor, 36 NY2d 106 [sole automobile stopped after occupant observed for one hour engaging in suspected criminal activity]; People v Schanbarger, 24 NY2d 288 [sole individual stopped after being observed walking on public highway in area subject to “frequent burglaries”]). Our decision today in no way affects the validity of these cases.