OPINION OF THE COURT
Edgar G. Walker, J.
The defendant is charged with one count of criminal posses *1082 sion of a weapon in the fourth degree, pursuant to Penal Law § 265.01 (1). The defendant has moved to suppress the handgun recovered from him, claiming a violation of his rights under the Fourth Amendment of the United States Constitution. A Mapp hearing was held by me on February 11, 1994.
The People called one witness, Police Officer John Scomillio. The defense rested after the People’s case without calling any witnesses. Based upon that portion of Officer Scomillio’s testimony which I find to be credible, I make the following findings of fact:
On November 26, 1993, Officer Scomillio along with his two partners, Officer Welsh and Officer O’Connor, were assigned by their sergeant to taxi and livery patrol along Fordham Road and Webster Avenue in the Bronx. The officers received no instructions as to how to proceed except for the sergeant’s verbal directions to stop every third livery cab carrying passengers and ask the driver if he is "okay.” The stated purpose of the patrol was to deter taxicab robberies and insure the safety of the cabdrivers.
The officers would patrol along Fordham Road and Webster Avenue pulling over "every third cab or so.” It was physically impossible for the patrol car to stop exactly every third cab traveling along these heavily trafficked roadways. In addition, if a cab aroused the officers’ interest, they would stop it based upon their "gut feeling” that it was "in danger.”
At approximately 9:45 p.m., while the officers were stopped at a red light at the intersection of Fordham Road and Webster Avenue, a livery cab with three passengers stopped at the light alongside the patrol car. The defendant, the middle passenger, turned toward and made eye contact with Police Officer Scomillio and then "slid down” in his seat to a "slouching” position. This conduct of the defendant, which Police Officer Scomillio characterized as "acting fidgety,” made the officer feel that the defendant "could be carrying a firearm.” He then told the other officers that this was the third cab.
When the light turned green, the officers followed the cab for about a block and then, with lights flashing, pulled it over. They approached the cab and shined their flashlights inside, observing nothing unusual. They then directed the passengers to place their hands in front of them and all three complied. Police Officer Scomillio noticed that the defendant was wearing a bomber jacket which appeared to have a bulge "where *1083 your jacket would stick out in front.” All three passengers were immediately ordered out of the cab and patted down. A gun was recovered from the defendant. No contraband was found on the other two passengers. Only after the gun was recovered was the driver asked if he was okay. He was.
CONCLUSIONS OF LAW
The police may set up a roadblock for the State’s legitimate purpose of preventing livery cab robberies, so long as reasonable procedural safeguards are in place to insure that the intrusion into the public’s freedom of movement which such stops entail is performed in a nonarbitrary, uniform and systematic manner. (People v Ingle, 36 NY2d 413.) The People in this case did not submit any evidence of guidelines or memoranda from the police department indicating the purpose of the patrol, the procedures to be followed by police personnel or the rationale for the time and location of its operation or the methods to be used. However, this court is aware of the rash of livery cab robberies in this county and recognizes that a legitimate State purpose could be served by checkpoints conducted in a proper manner.
To insure that the checkpoints do not intrude to an impermissible degree upon the individual’s privacy they must be conducted in accordance with a uniform procedure which affords little discretion to operating personnel and contains adequate precautions as to safety and notice to the public, such as "signs announcing the purpose, lighting, and identifiable police vehicles and the observable fact that there is a uniform system for stopping cars.” (People v Scott, 63 NY2d 518, 527.)
These visible manifestations of the officers’ authority provide assurance to the public that the checkpoint is being operated in a lawful manner and under proper authorization. (United States v Martinez-Fuerte, 428 US 543; People v Scott, supra.)
Clearly the officers in this case were not operating a checkpoint of any kind. They were on a roving patrol which, in general, requires the police to be aware of specific articulable facts which raise a reasonable suspicion of criminal activity to justify a stop of a vehicle. (United States v Brignoni-Ponce, 422 US 873.) The People do not even argue that defendant’s "slouching” was sufficient to justify the stop in this case, nor could they in good faith given the current state of the case *1084 law. (People v McCready, 121 AD2d 897; People v King, NYLJ, Dec. 22, 1993, at 22, col 1 [App Term, 1st Dept].)
In this State, the Court of Appeals has approved of stops by a roving patrol in the absence of reasonable suspicion in narrowly defined circumstances where traditional procedures would be impracticable. (People v John BB., 56 NY2d 482.) However, these stops must also be made pursuant to a nonarbitrary, nondiscriminatory and uniform procedure. The Court in John BB. stressed that "[although not controlling, the elimination of the element of arbitrariness has been identified time and again as a critical factor in determining the reasonableness of official investigative activity of an intrusive nature.” (56 NY2d, at 488.)
The assignment given to Police Officer Scomillio by his sergeant was inherently arbitrary in that it was impossible to carry out. There is no way that a single patrol car could uniformly stop and question the driver of every third occupied cab while traveling along heavily travelled roads. Of necessity the officers had to rely on other less uniform and more subjective factors in deciding which cabs to stop. Because none of the specific procedures or safeguards which were crucial to the Court’s decision in Scott and John BB. (supra) were promulgated or followed in this case, there was nothing to prevent these officers from stopping a cab based on a gut feeling, as testified to by Police Officer Scomillio, or "mere whim, caprice, or idle curiosity.” (People v John BB., 56 NY2d, at 488.)
That the methods employed by this patrol were unreasonable is illustrated not only by the stop itself but by what occurred after the cab was stopped. Rather than question the driver, as they had been instructed to do, the police immediately ordered the three passengers out of the cab and frisked them.
With respect to the defendant, the undefined bulge where a bomber jacket would normally stick out is clearly an insufficient predicate for the police action taken. (People v Prochilo, 41 NY2d 759; Matter of Allan L., 59 AD2d 865.) No basis whatsoever is even offered to justify the frisk of the other two passengers.
In short, no specific, coherent, nonarbitrary procedures were established at a command level to implement a program of cab inspections which would both serve an important governmental interest and protect the traveling public from unrea *1085 sonable official intrusions upon their privacy. Nor did Police Officer Scomillio observe anything which would otherwise justify the stop of the cab and the frisk of the defendant and the other passengers.
The motion to suppress is granted.