Levine, J.
(dissenting). We respectfully dissent. Patrolling in the course of their investigation of an armed, felonious assault by the victim’s estranged boyfriend, the police, accompanied by the victim, encountered defendant in his automobile. The victim assured them defendant would know the perpetrator’s immediate whereabouts. The police signaled defendant to stop his moving vehicle in order to obtain that information from him. The police did nothing more than activate their car’s turret lights and horn, and then approach defendant on foot *760 without drawing their weapons. The majority condemns this straightforward, restrained response to the direct, immediate information obtained from the victim as an unreasonable seizure in violation of defendant’s rights under the Fourth Amendment. We disagree.
The majority arrives at this result by purporting to apply the balancing test of People v Scott (63 NY2d 518) and People v John BB. (56 NY2d 482, cert denied 459 US 1010). Those cases hold that the validity of an informational vehicular stop by the police, such as here, on less than individualized suspicion of criminal activity of an occupant of the vehicle, is dependent on its "reasonableness”, to be determined on a case-by-case basis by balancing the particular intrusion on the privacy interests of the individual involved against the State’s legitimate interest in the inquiry (see, People v Scott, supra, at 525; People v John BB., supra, at 487).
In finding the police conduct unreasonable here, the majority’s balancing analysis, in our view, lacks objectivity. It denigrates the State’s legitimate interest in likely gaining important information from defendant, exaggerates the intrusiveness of the stop on defendant’s privacy interest and ignores the findings of the lower courts, supported by evidence in the record, that the police conduct "was not arbitrary [nor] based on mere whim, caprice, or idle curiosity. It was based on information supplied by the victim of the crime who knew the perpetrator, Bloomfield; knew the defendant; knew that the defendant knew Bloomfield, and believed that the defendant would know where Bloomfield was” (193 AD2d 90, 95-96 [emphasis supplied]).
In actuality, there is no balancing by the majority here. Vehicular stops not based on reasonable suspicion of criminal activity of an occupant are strictly limited to (1) "nonpretextual traffic checks to enforce traffic regulations” (majority opn, at 753); (2) the existence of some undefined but apparently extreme or absolute exigency for police action while engaged in prevention of ongoing criminal activity (majority opn, at 754-755, 757-758); and (3) stops pursuant to a nonarbitrary, nondiscriminatory uniform procedure (majority opn, at 758). A rigid, restrictive code of police conduct has been applied by the majority here, in spite of our holding in People v John BB. that "[t]he indefiniteness of the term 'unreasonable’ [in the Fourth Amendment] militates against the construction of a general rule of universal application for determining the validity of official intrusions of this nature” (56 NY2d, at 487, supra).
*761 The evidence at the suppression hearing established that the complainant first filed her charge against Dion Bloomfield, her estranged boyfriend, on May 16, 1989, accusing him of striking her in the mouth with a pistol (breaking a tooth) at 4:00 a.m. that day. According to her testimony at the hearing, she was instructed by the police to call them if she saw her assailant. During the evening of May 17, she saw the boyfriend at a neighborhood restaurant, the "Jerk Chicken.” She called the police and it was in response to that call that the arresting officers picked her up and began circling the neighborhood to look for her assailant, to no avail. However, they did spot defendant’s car double parked in the vicinity of the Jerk Chicken. Just as defendant’s car pulled away, according to the complainant, she informed the officers, "that’s Dion['s] friend. If he’s around, then Dion should he around” (emphasis supplied). It was this information that was the basis for the police action in following and then signaling defendant to stop his vehicle. The hearing court’s undisturbed finding was: "[b]elieving that [defendant] would furnish information as to [the boyfriend-assailant’s] whereabouts, [the officers] followed his car. They activated their turret light and car horn to stop defendant’s car” (emphasis supplied).
The foregoing facts establish the reasonableness of the limited seizure which occurred here, on any fair application of the balancing analysis mandated by the Supreme Court and our own case law. First, the governmental interest in stopping defendant’s vehicle for information on the assailant’s whereabouts was substantial. Even if we were to accept the majority’s characterization of that interest as strictly limited to the "investigation and detection of past criminal conduct” (majority opn, at 754), undeniably, the past criminal conduct here was a violent felony, committed only some 40 hours earlier, and the police were entitled to presume that the perpetrator remained in illegal possession of the deadly weapon used against the victim. United States v Hensley (469 US 221), relied upon by the majority to minimize the governmental interest here, is actually directly instructive on the justification for the stop under the uncontested facts just described:
"Particularly in the context of felonies or crimes involving a threat to public safety, it is in the public interest that the crime be solved and the suspect detained as promptly as possible. The law enforcement interests at stake in these circum *762 stances outweigh the individual’s interest to be free of a stop and detention that is no more extensive than permissible in the investigation of imminent or ongoing crimes” (id., at 229).
Moreover, as the Appellate Division recognized, there was more of a compelling governmental interest here than the mere detection of past criminal activity. The perpetrator was an armed and dangerous person. The crime he committed was not a random street assault, but arose out of a romantic relationship which had turned hostile and sufficiently perilous to the victim that her mother caused her to file a criminal complaint. The victim, following instructions from the police upon her prompt report of the crime the day before, reported seeing defendant in the neighborhood earlier that evening. These facts, notably the assailant’s particularized personal hostility toward the victim and his use and continuing possession of a handgun, readily support a preventative governmental interest in the stop, in addition to the interest in detecting a past crime. In its repeated assertion that no ongoing crime was "afoot” here (majority opn, at 756; see also, id., at 754-755, 757-758), the majority pointedly ignores Dion Bloomfield’s continued criminal possession of a deadly weapon. This illustrates the flaw in the majority’s application of the balancing analysis required in a case of this kind.
Moreover, inquiring of defendant just as he left the area where the victim’s assailant had been seen earlier in the evening promised more than just the possibility of locating the assailant at some future time. Since (according to what the complainant told the police) "if [defendant’s around, then [her assailant] should be around”, questioning the defendant would indeed likely disclose information on the assailant’s then location, as found by both lower courts here. Thus, a degree of urgency was present in that the police justifiably believed that defendant would give them information on the assailant’s immediate whereabouts. These governmental interests — apprehension of a serious felony offender, prevention of further violence, seizure of an illegal handgun and the urgency of the need to obtain fresh rather than stale information on the perpetrator’s whereabouts — far exceeded the substantiality of the governmental interest in conducting the informational stop in People v John BB. "in the heavily burglarized area, in order to facilitate the concededly legitimate function of acquiring information regarding the recent burglaries” (56 NY2d 482, 488, supra).
*763 The degree of intrusion on defendant’s privacy interest was not high here. The stop occurred well after nightfall. The activation of turret lights and use of the patrol car’s horn would appear to have been the least threatening way effectively to signal defendant to stop his vehicle, an inference confirmed by the hearing court’s finding that defendant travelled an additional block thereafter before bringing his vehicle to a halt. The officers approached defendant’s vehicle without drawing their service revolvers. They did not issue any direct order to defendant not to resume moving (cf., People v May, 81 NY2d 725). Nor did the seizure here begin to approach the level of intensity of that in People v John BB. (supra) where, as reported in the decision at the Appellate Division, the defendant’s vehicle was surrounded by three troop cars at the side, front and rear (see, People v John BB., 81 AD2d 188, 189).
Given the urgency of gathering fresh information on the violent felon’s then whereabouts as previously described, the record fully supports the suppression court’s undisturbed finding that "[u]nlike other cases where means less intrusive than a stop, such as continued observation, are available to the police in furtherance of an investigation [citations omitted], here the police officers had no alternative to the stop.” The majority’s finding to the contrary, that some unspecified less intrusive procedures were available to the police to attain their objective (majority opn, at 757), is not only beyond our powers in reviewing the findings of the lower courts, but in our view is singularly inappropriate hindsight regulation of police conduct by appellate Judges far removed from the realities of dynamic street situations that the police confront as events unfold (see, People v De Bour, 40 NY2d 210, 225).
Finally, in determining, contrary to the findings of the courts below, that the informational stop here was arbitrary and the result of "the unchecked discretion” (majority opn, at 758) of the police and, thus, was unreasonable, the majority not only once more exceeds this Court’s fact-finding powers but also commits an error of law. According to the majority, vehicular stops not based upon reasonable suspicion of an occupant’s criminal activity are arbitrary and the result of the exercise of unconstrained discretion unless an extreme, immediate exigency exists to prevent a crime in process or the stop is pursuant to a nonarbitrary, nondiscriminatory uniform procedure of stopping vehicles for a legitimate informational purpose. There is no authority whatsoever which would sup *764 port the majority’s position that such an absolute exigency is a sine qua non for the validity of an informational vehicular stop, rather than just one of many factors to be considered in assessing the weight of the governmental interest served by the stop in the balancing process mandated by the decisions of our Court and the Supreme Court.
Likewise, neither our decisions nor those of the Supreme Court condemn as arbitrary and wholly discretionary all informational stops unless made pursuant to a uniform, standardized procedure, such as a border or DWI checkpoint. Indeed, the Supreme Court’s holding in Brown v Texas (443 US 47, 51) instructs otherwise:
"A central concern in balancing these competing considerations in a variety of settings has been to assure that an individual’s reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field [citations omitted]. To this end, the Fourth Amendment requires that a seizure must be based on specific, objective facts indicating that society’s legitimate interests require the seizure of the particular individual, or that the seizure must be carried out pursuant to a plan embodying explicit, neutral limitations on the conduct of individual officers” (emphasis supplied).
In the instant case, the record clearly demonstrates the existence of "specific, objective facts” justifying the police procedure employed to stop defendant, namely, (1) the police had probable cause to believe that the complainant’s former boyfriend-assailant had committed a felonious assault, was armed and potentially dangerous; and (2) the police had direct information from someone having personal knowledge of the facts that defendant would likely be capable of disclosing the assailant’s then whereabouts. Thus, far from being based on pure whim or caprice, the reliable information possessed by the police actually furnished them with a completely objective (not subjective) justification for the stop, i.e., the likelihood on the basis of independent information that questioning defendant at that time would lead to the prompt arrest of the complainant’s dangerous assailant. This is in total contrast to the stop in People v May (81 NY2d 725, supra), relied upon by the majority, where the only objective facts the police had to suspect anything were that the defendant and his female *765 companion were parked at night in a high-crime neighborhood and pulled away when the police approached. Moreover, the specific, objective factual justification for the stop of defendant here is far greater than merely "some articulable basis” (majority opn, at 753, 754), the majority’s mischaracterization of the standard we have applied for this informational vehicular stop.
On the basis of the foregoing, the Appellate Division correctly found that the stopping of defendant’s vehicle was not arbitrary or based on whim or caprice. Rather, the police action here fully complied with the requirement of reasonableness articulated in Delaware v Prouse (440 US 648, 654) "that the facts upon which an intrusion is based be capable of measurement against 'an objective standard, ’ whether this be probable cause or a less stringent test.” The majority’s fear here is absolutely unjustified that upholding this measured, entirely reasonable and commendably decisive response to the direct, immediate information given by a victim of a violent assault, will somehow open "a pandora’s box of pretextual police [informational] stops” (majority opn, at 759). As this case demonstrates, the objective, factual basis for an informational stop is fully capable of assessment in order to insure that the police are not acting from pure whim or caprice, no less than in the case of an investigative stop of a vehicle whose occupants are suspected of criminal activity. The majority’s prophylactic restriction on completely reasonable and responsible police conduct here ironically grants elevated Fourth Amendment protection to occupants of a moving vehicle in which a citizen is traditionally held to have a diminished expectation of privacy (see, People v Scott, 63 NY2d 518, 525, supra; United States v Martinez-Fuerte, 428 US 543, 561).
After legally stopping defendant’s vehicle, the police were justified in using flashlights to illuminate the interior to insure their own safety, to seize the bag of marihuana they saw in plain view and then to place defendant under arrest.
Accordingly, we vote to affirm the order of the Appellate Division.
Chief Judge Kaye and Judges Titone and Smith concur with Judge Ciparick; Judge Levine dissents and votes to affirm in a separate opinion in which Judges Simons and Bellacosa concur.
Order reversed, etc.