OPINION OF THE COURT
Joseph F. Lisa, J.
The defendants’ motion to suppress physical evidence and an oral statement alleged to have been made by the defendant Edwin Gomez is denied.
At issue is the initial stop of the vehicle (a taxicab), the subsequent search of defendants and of the cab, the seizure of a weapon, and the voluntariness of defendant Gomez’ statement.
The People presented one witness, Police Officer McMahon, shield No. 27059, assigned to the Street Crime Unit. The court found the testimony of Police Officer McMahon to be credible. The defendants did not present any witnesses.
FINDINGS OF FACT
The evidence adduced at the hearing is as follows:
The New York City Police Department’s "Mobile Taxi/Livery Robbery Task Force” unit has an agreement with New York City Taxi and Livery union which provides for the officers of the New York City Police Department to stop taxicabs and hand out safety tip information brochures.
On the evening of July 23, 1994, at approximately 8:45 p.m., Police Officer McMahon while assigned to the taxicab task force was stopping taxi/livery cabs and handing out safety tip brochures to the drivers. The stop in question was made pursuant to an established random selection process of stopping every tenth taxi/livery cab traveling eastbound on Hillside Avenue and 169th Street, a high prevalent crime area. The officer, upon reaching the random count of 10, placed his car behind the selected taxicab and by "flashing” his lights he succeeded in pulling the cab over. The officer exited his car and began to approach the stopped cab from the rear on the driver’s side. The light cast by his headlights permitted the officer to see two male figures (the defendants) seated in the rear of the cab. First, the defendants turned and looked in the officer’s direction. Then defendant Alburquerque, who was seated behind the driver, suddenly ducked out of the officer’s *199 sight. When the police officer reached the rear passenger door, he opened it and saw the defendant Alburquerque trying to shove a bag under the rear of the driver’s seat. The officer thereupon ordered the defendants out of the cab and reached down and grabbed the bag. Upon touching the bag he, the officer, felt an object within it that he believed to be a gun. The bag was searched and the police recovered a gun and a pack of Newport cigarettes. The defendants were placed under arrest. Later, at the police station, the officer overheard the defendant Edwin Gomez speak to the defendant Alburquerque and say "Hey, Johnny, where are your Newports?”
The People maintain that the Police Department’s Taxi/ Livery Program, which was instituted to provide safety checks of taxicabs, has resulted in a significant decrease in the number of robberies and homicides against New York City taxicab drivers.
The defendants argue that the cab was illegally stopped, claiming that the stop ostensibly to give the taxi driver routine safety information did not justify a search and seizure of the defendants, the bag and its contents. Defendants further contend that "without additional articulable reasons to stop the car [taxi], it is clear that the stop of the car was without the requisite reasonable suspicion to make such a stop under the Fourth Amendment to the United States Constitution.”
It appears that the "Taxi Safety Check Program” was instituted by the Street Crime Unit of the New York City Police Department in 1993 after a serious increase in the number of robberies and gunshot murders of New York City taxicab drivers.
The defendants’ motion seeks to suppress the oral statement alleged to have been made by the defendant Gomez; as well as the property (the gun and the pack of Newport cigarettes) seized. The defendants contend that the so-called taxi safety stop was in effect a pretext to stop the cab and constitute an illegal detention of the defendants. Thus, the search, the seizure and the oral statement should all be suppressed. The People contend that the "stop” was the result of a reasonable legitimate governmental purpose. Furthermore, the conduct of the defendants, in looking back at the officer and then ducking out of sight, warranted arousing the police officer’s suspicion and justified the frisk of the defendants as well as the soft bag containing the gun.
*200 CONCLUSIONS OF LAW
In determining whether the police conduct was reasonable, the court must balance the State’s interest and the defendants’ interest in being at liberty (being free from unreasonable search and seizure). (People v John BB., 56 NY2d 482.)
My learned colleague, Mr. Justice Kohm, in a recent well-reasoned decision based upon similar facts, upheld the safety check stop of a taxicab stating: "Prevention of crime is as necessary to law enforcement as its detection * * * Thus, the facts indicate that the police were pursuing legitimate governmental aims in raising the taxidriver’s perception of the risk * * * involved in driving in a specific Queens area.” (People v Carty, 164 Misc 2d 275, 280.) As in the case at bar, the aim of raising the taxi driver’s perception of risk is a legitimate governmental reason to stop the cab. Furthermore, this court finds that the policy of stopping every tenth cab, as is the policy under the Taxicab Safety Program, renders the implementation of this program to be random and nonarbitrary as permitted under Delaware v Prouse (440 US 648).
Once the taxicab was lawfully stopped, the officer thereupon observed one of the passengers suddenly duck down and attempt to stuff a soft bag under the front seat of the cab. The officer’s observations constituted reasonable grounds to believe that something unusual and suspicious had occurred. Once an articulable suspicion of criminal activity occurred, the officer was justified in ordering the defendants out of the cab. Upon looking into the open rear passenger area of the taxi, the officer observed the defendant Alburquerque stuff a soft bag under the rear of the cab driver’s seat. The officer then placed his hand on the bag and felt an object that he identified to be a gun. These actions by the officer are permissible for not only the officer’s safety but the safety of the cab driver as well.
The court also recognizes that the police officer had the duty to ensure his own safety and the safety of the driver of the cab.
The People, in their memorandum of law, clearly set forth the reasoning supporting this court’s decision as to why suppression should be denied. In pertinent part it states that: "The officers’ and innocent-by-standers’ [sic] safety are not guarded by a frisk of the person only, in this circumstance given the facts, the bag was clearly the object that was attempted to be hidden and that bag therefore should also be the object of the frisk. The very real nature of the threat *201 presented by the accessibility of the gun as soon as the defendants were allowed to re-enter the cab and reach the bag justifies and illustrates the reasonable actions of frisking the bag and then of course recovering of the gun once one was felt, if not for the safety of the officers, then for the safety of the cab driver who would still be in the cab with the defendants [along with what was reasonably believed to be a potential danger — that is, the contents of the bag being stuffed under the driver’s seat]”. To allow the defendants to re-enter the cab without checking the bag would have been irresponsible on the part of the officer.
Insofar as that portion of the defendants’ motion seeking to suppress the oral statement is concerned, the People contend that it was spontaneous and, therefore, admissible.
The defendants, however, contend that the statement, "Johnny, where’s your Newports?” was made while the defendants were in custody and therefore in violation of their Fifth Amendment rights of protection against self-incrimination. The court finds that the defendant Gomez’ statement was spontaneous and voluntarily made. It was neither made in response to questions put to the defendants by the police nor was it in any way coerced by the police officers. (Rhode Is. v Innis, 446 US 291.)
It is therefore the holding of this court that the physical evidence seized and the oral statement attributed to the defendant Gomez are admissible.