Smith, J.
(dissenting). Because I believe that the procedures used here were appropriate in the effort to prevent crime against taxicab drivers and because I believe that the constitutional rights of the defendants were not violated by the searches, I dissent.

Matter of Muhammad F.

On July 7, 1996, at about 11 p.m., the police were in plain clothes patrolling an area in which there had been many robberies of taxicab drivers. The procedure was to stop every third cab, make inquiry as to safety of the driver and give the driver a safety pamphlet. When the taxicab was stopped, the police noticed one of the three passengers lean forward and push something under the front seat of the vehicle. The three persons were ordered out of the vehicle and the vehicle was searched. The search revealed a bag pushed under the front seat containing drugs and drug paraphernalia. Two of the passengers denied that the drugs belonged to them. Respondent juvenile admitted that the drugs were his. He was arrested and charged with acts constituting criminal possession of a controlled substance and related crimes.
Muhammad F. moved in Family Court to suppress the drugs recovered from the taxicab. The allegations made in support and in opposition to the motion are crucial to a decision in this case. Muhammad F. alleged that the evidence was seized from him in violation of the Fourth, Fifth and Sixth Amendments to the Federal Constitution and to article I, §§ 6 and 12 of the New York State Constitution. The People denied that the rights of the juvenile were violated and further alleged that he had no standing to challenge the seizure of the evidence.
Family Court denied the suppression motion. The Appellate Division reversed, with one Justice dissenting, granted the suppression motion and dismissed the juvenile delinquency petition.
On this appeal, the prosecution/appellant in Muhammad F. argues that the Taxi Robbery Task Force Program is a reason *150 able means of attempting to prevent the robbery and assault of taxicab drivers. Respondent Muhammad F. argues that he was illegally stopped by police officers in plain clothes without any suspicion of wrongdoing and pursuant to an arbitrary, unwritten policy.

People v Boswell

On February 27, 1995, at about 9 p.m., the police were in an unmarked car stationed at a fixed location in the Bronx. The officers were part of a program to stop every third taxicab in an effort to thwart a series of taxicab robberies. When the taxicab passed the location at which the police car was stationed, the police pursued and stopped it. An officer observed defendant kick a bag under the front seat of the vehicle. When the officer asked if the bag belonged to defendant, he denied ownership. The bag was examined and drugs were recovered.
Defendant Boswell moved to suppress the evidence seized on the ground that it was recovered in violation of the Fourth Amendment to the Federal Constitution and article I, § 12 of the New York State Constitution. The People denied any violation of these provisions and, in addition, alleged that defendant had no standing to challenge the search of the taxicab.
Supreme Court granted defendant’s motion to suppress. In its opinion, the court ruled that defendant had standing to challenge the stop of the vehicle. On reargument, the court adhered to its decision. It also ruled that had the stop of the car been lawful, defendant would lack standing to challenge the search of the bag.
The Appellate Division reversed. In its brief to the Appellate Division, the People argued that defendant lacked standing to contest the search of the vehicle. The standing issue was not, however, addressed by the Appellate Division.
On appeal here, defendant/appellant Boswell argues that the police were engaged in a roving patrol, that the stop of the taxicab was without suspicion and unconstitutional, and that the seizure of the drugs was fruit of that wrongful stop. The People argue that the stop was pursuant to a uniform, nonarbitrary and nondiscriminatory policy of stopping every third taxicab which passed a fixed location and that defendant has no standing to contest the search of the taxicab since he disclaimed ownership of the seized bag.
Discussion
At the heart of these appeals is the policy designed to prevent robberies of and assaults upon taxicab drivers in New York *151 City. At the hearing in Muhammad F., Captain Savage, the commander of the Street Crimes Unit, testified that because of 3,600 robberies of taxicab drivers in 1992, the unit, in 1993, was assigned to concentrate on the prevention of such robberies. He testified further, “The crime rate has declined in every precinct that we targeted.” There is no dispute that the government has a legitimate interest in preventing such occurrences. A policy undertaken in response to criminal activities against taxicab drivers can be reasonable and consistent with the requirements of the Fourth Amendment and article I, § 12 of the New York State Constitution.
Two features of the current policy should be noted. First, the policy is unwritten. While that fact does not make the policy unconstitutional, a written policy would be more susceptible to review. Second, the policy consists of fixed locations where the police have a uniform, nonarbitrary policy of stopping vehicles (see, People v Ingle, 36 NY2d 413), although a roving patrol, narrowly focused on a particular crime situation, has also been upheld (People v John BB., 56 NY2d 482, cert denied 459 US 1010 [all vehicles in a particular area were stopped by a roving patrol after a series of unsolved burglaries]).
To be constitutional, a policy must be uniform and nondiscriminatory. Moreover, the policy cannot be used as a pretext for harassing innocent citizens. Here, the policy was to stop every third taxicab to make inquiry as to the safety of the driver, a nonarbitrary procedure with a reasonable basis.
Thus, inasmuch as the government may institute a policy to prevent the robbery of taxicab drivers, the issue becomes whether in these cases the implemented policy violated the rights of the individuals. The challenges to the stops in these cases are made, not by the driver of the taxicabs, but by the passengers in those cabs. It is clear, however, that the interests of the driver and of the passengers are different. In both cases, the police stopped the drivers in order to insure that they were safe. Insofar as the taxicab drivers were concerned, the stops were akin to the request for information in People v De Bour (40 NY2d 210), which this Court found permissible. Nevertheless, even assuming that the vehicles were seized, there is nothing improper about the policy itself or the procedures used to effectuate that policy.
The case of People v John BB. (56 NY2d 482, supra) supports the action taken here. There, a series of burglaries had occurred in a sparsely populated area of Sullivan County known *152 as the Anawanda-Tennanah Lake region. Although there was no fixed checkpoint, the police decided to stop every vehicle in a general area. Pursuant to that policy, the car in which John BB. was a passenger was stopped although no evidence existed that the driver or passengers were engaged in any type of illegal activity. The driver was asked for his license and registration. When the driver got out of the car with the requested documents, the police shone a flashlight into the interior, revealing a rifle and a pellet gun that had been reported stolen. A subsequent search of the vehicle revealed additional items taken during the burglaries.
This Court held that the stop in that case was made pursuant to a “nonarbitrary, nondiscriminatory and uniform procedure” with no intent to harass {id., at 488). In determining the constitutionality of a stop, this Court stated:
“The indefiniteness of the term ‘unreasonable’ militates against the construction of a general rule of universal application for determining the validity of official intrusions of this nature. Rather, the facts of each case must be examined and the essential inquiry is whether the police conduct may be characterized as reasonable, which in turn requires a balancing of the State’s interest in the inquiry at issue against the individual’s interest in being free from governmental interference” {id., at 487).
It is significant that in John BB., this Court determined that neither United States v Martinez-Fuerte (428 US 543) nor United States v Brignoni-Ponce (422 US 873) constituted a barrier to the procedure undertaken. In United States v MartinezFuerte, the Supreme Court upheld a fixed checkpoint location to check for illegal aliens even without a requirement of reasonable suspicion. In United States v Brignoni-Ponce, the Supreme Court held that, in a search for illegal aliens, a roving patrol which stopped a vehicle solely because the occupants appeared to be Mexican was unconstitutional and that reasonable suspicion was the standard for stopping such a vehicle.
Turning to the issue of standing, while defendants may have standing to challenge the stop of the taxicabs and to seek suppression of the contraband as fruit of an unlawful stop (see, People v Millan, 69 NY2d 514, 516), the evidence may be suppressed only if it is pursuant to an illegal stop directly leading to the discovery of the contraband (see, People v Rogers, 52 *153 NY2d 527, 535). Here, arguably, the discovery of the drugs in both cases was due to the suspicious conduct of the passengers, not the stops of the taxicabs. Stated differently, in both cases before us, the search of the vehicle resulted from observed efforts to hide something under the front seat of the vehicle after the taxi was stopped.
In order to challenge the constitutionality of a search, the burden is on the person challenging the search to demonstrate a reasonable expectation of privacy (People v Wesley, 73 NY2d 351, 358-359). In both cases here there is no showing by defendants that they had a legitimate expectation of privacy in the passenger compartment of the taxicabs (see, Rakus v Illinois, 439 US 128 [passengers did not have standing to contest the search of the automobile since they did not have an expectation of privacy]; People v Millan, 69 NY2d, supra, at 520 [reserving the issue of whether a passenger in a taxicab had an expectation of privacy in the passenger compartment]; People v Wesley, 73 NY2d 351, supra [defendants charged with constructive possession of a weapon did not have standing based on that factor alone]). For example, in Boswell, defendant denied possession of the bag in which the contraband was discovered, evincing that he had no reasonable expectation of privacy in that bag and, thus, no standing to challenge its admission into evidence (see, id., at 360-364). Thus, despite the majority’s reluctance to deal with the issue of standing, it is central to both cases.
For these reasons, I dissent and vote to uphold the searches in both cases.
Chief Judge Kaye and Judges Bellacosa, Wesley and Rosenblatt concur with Judge Levine; Judge Smith dissents and votes to affirm in a separate opinion; Judge Ciparick taking no part.
In Matter of Muhammad F.: Order affirmed, etc.
In People v Boswell: Order reversed, etc.