OPINION OF THE COURT
Howard M. Bergson, J.
The defendant was charged with operating a motor vehicle while under the influence of drugs in violation of Vehicle and *743 Traffic Law § 1192 (4) and criminal possession of marijuana in violation of section 221.10 of the Penal Law. He has challenged the constitutionality of the roadside safety checkpoint that he encountered when he was arrested and seeks the suppression of all the evidence obtained as a result of his vehicle being stopped. The defendant claims, in part, that the checkpoint stop was not performed pursuant to a written plan or guidelines and therefore violated his 4th Amendment rights.
Pursuant to the order of this court dated January 21, 2005, a combined Dunaway/Mapp/Huntley and refusal hearing was held on May 12, 2005 and concluded on August 17, 2005. The defendant and the People were given an opportunity to submit memorandums of law by September 12, 2005.
At the hearing Police Officer Reiner, of the Suffolk County Police Department, testified that he was the arresting officer and that he was directed by his supervisor to interview a motorist that the supervisor had sent to the inspection portion of the checkpoint. The officer further testified that when he walked over to the defendant’s vehicle he observed the defendant opening and closing the center console. On top of the console was a marijuana cigarette. At the checkpoint, the defendant was observed to have bloodshot and watery eyes. There was a strong odor of marijuana which came out of the car when the defendant exited the vehicle and he was unsteady on his feet. The officer then searched the center console and found a clear plastic bag containing marijuana. The defendant was asked to stick out his tongue and the officer observed that the defendant’s taste buds were raised, an indication that he smoked marijuana. The. officer had the defendant perform two field sobriety tests, the one-legged stand and the walk and turn. In the officer’s opinion, the defendant failed these tests as the defendant staggered in his attempts to complete them.
The officer subsequently placed the defendant under arrest for driving while under the influence of drugs and criminal possession of marijuana. Once told that he was being placed under arrest, the defendant stated: “Come on man, I smoked earlier. I haven’t smoked in a while.”
Officer Reiner testified that after he transported the defendant to the precinct to process his arrest, the defendant refused, after being advised of the consequences, to submit to a chemical test to determine the drug or alcohol content of his blood. In part, the defendant’s response was “nobody is taking my blood.”
*744 On cross-examination, defense counsel elicited testimony from Officer Reiner about the operation of the safety checkpoint. The testimony provided the following details:
1. Every third car was to be stopped and was to be checked for violations of the Vehicle and Traffic Law;
2. The guidelines for the stop were communicated to Officer Reiner by the supervisor at the scene, Sergeant Healy;
3. There were no written guidelines;
4. Six or eight officers were at the checkpoint;
5. The roadway where the safety checkpoint was conducted was a three-lane road in each direction. The checkpoint tunneled the lanes down to one;
6. There was no sign or warning indicating to the motorists that a checkpoint was imminent. However, just prior to the checkpoint the police erected a sign warning oncoming drivers of an accident ahead;
7. Sergeant Healy stopped every third vehicle. The vehicle was directed into the parking lot where a sobriety test would be conducted if deemed necessary and as well as a safety-vehicle and traffic check;
8. Officer Reiner never observed the sergeant deviate from the procedure of stopping one out of three vehicles;
9. Officer Reiner had made two or three arrests for driving while impaired by drugs but neither he nor Sergeant Healy were drug recognition experts.
Subsequently, Sergeant Healy testified and substantially confirmed the testimony of Officer Reiner as to the operation of the safety checkpoint that evening and the stop of the defendant’s car. He also confirmed Reiner’s understanding as to the lack of written guidelines or procedures for the conducting of safety checkpoint stops. In fact, Sergeant Healy was unaware of any written guidelines promulgated for this type of police activity within Suffolk County.
The suspicionless stop of a motor vehicle constitutes a seizure within the meaning of the Fourth Amendment. (Indianapolis v Edmond, 531 US 32 [2000]; Matter of Muhammad F., 94 NY2d 136 [1999]; People v Scott, 63 NY2d 518 [1984].) Unlike the sobriety checkpoint which was the subject of People v Scott, and the stops of taxicabs which were the subject of Matter of Muhammad F., this roadblock was established for the purpose of the general enforcement of the Vehicle and Traffic Law of the State of New York. Checkpoint stops and roadblocks for these *745 purposes have been found to be constitutional so long as the interference with an individual’s travel and privacy is not done at the unbridled discretion of police officers. (See, Delaware v Prouse, 440 US 648 [1979].) The Court in Prouse made clear that it is the unfettered governmental intrusion or the unconstrained exercise of discretion that renders a type of interference objectionable. That Court held the states’ interest in a discretionary spot check as a means of ensuring the safety of its roadways does not outweigh the resulting intrusion on the privacy and security of the persons detained, but these concerns do not prevent states from developing techniques and procedures for spot check stops that do not involve unconstrained exercise of discretion.
The balancing of these interests has been restated by the Court of Appeals in Matter of Muhammad F. (94 NY2d at 142), in which the Court stated:
“A brief, suspicionless stop of an automobile, while far less intrusive than a traditional arrest, nonetheless qualifies as a seizure (see, Michigan Dept. of State Police v Sitz, 496 US 444, 450; People v Spencer, 84 NY2d 749, 752). The reasonableness of such a seizure ‘depends “on a balance between the public interest and the individual’s right to personal security free from arbitrary interference by law officers” ’ (Brown v Texas, 443 US 47, 50 [emphasis supplied and citations omitted]).”
Determining whether these stops are constitutional requires a weighing of “[1] the gravity of the public concerns served by the seizure, [2] the degree to which the seizure advances the public interest, and [3] the severity of the interference with individual liberty” (443 US at 51). A critical requirement for all such seizures relates to the “central concern . . . that an individual’s reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field” (id.). Namely, “the seizure must be carried out pursuant to a plan embodying explicit, neutral limitations on the conduct of individual officers” (id.; see also, People v Spencer, supra at 758-759). In Michigan Dept, of State Police v Sitz, the Supreme Court stated that the balancing analysis of Brown v Texas and earlier precedents should be utilized in these “cases dealing with police stops of motorists on public highways.” (Michigan Dept. of State Police v Sitz, supra at 450.)
The resulting question is whether the proof adduced in this case established a reasonableness of the checkpoint stop under *746 the three-prong balancing test of Brown v Texas (supra), or whether the constitutional requirement that the stop be carried out pursuant to a plan embodying explicit neutral limitations on the conduct of the individual officers was implemented. (See, Matter of Muhammad F., supra at 148.)
Safety checkpoints of the type described by the police officer and Sergeant Healy are constitutional so long as the stops are performed in a manner that
“did not intrude to an impermissible degree upon the privacy of motorists approaching the checkpoint, that it was being maintained in accordance with a uniform procedure which afforded little discretion to operating personnel, and that adequate precautions as to safety, lighting and fair warning of the existence of the checkpoint were in operation (People v Peil, 122 Misc 2d 617; State v Deskins, 234 Kan 529; Little v State, 300 Md 485; State v Coccomo, 177 NJ Super 575; State v Shankle, 58 Ore App 134; cf. People v Ingle, 36 NY2d 413, supra; State ex rel. Ekstrom v Justice Ct, 136 Ariz 1; People v Bartley, 125 Ill App 3d 575; State v Hilleshiem, 291 NW2d 314 [Iowa]; Commonwealth v McGeoghegan, 389 Mass 137; State v Olgaard, 248 NW2d 392 [SD])” (People v Scott at 526).
Notwithstanding this requirement, neither the language nor the logic of the Court of Appeals holdings in either Muhammad F. (supra) or Scott (supra) require the conclusion that such a plan must be in written form. To the contrary, the Court’s reliance, in Muhammad F., on Delaware v Prouse and upon its own decisions in People v Spencer (84 NY2d 749 [1995]) and People v John BB. (56 NY2d 482 [1982]), requires just the opposite conclusion. Specifically, in John BB., the Court upheld a suspicionless stop which was part of a roving roadblock because it was conducted in a uniform, nonarbitrary and nondiseriminatory manner with no mention of a written plan. While clearly written guidelines would make it easier for a court to review the nature, manner and purpose of a roadblock/checkpoint stop, the Court’s decision in Muhammad was ultimately based
“[o]n the scanty proof adduced in these cases, [that] there was a failure either to establish the reasonableness of the patrol stops here under the three-pronged balancing test of Brown v Texas (supra) or to satisfy the constitutional requirement that the stops were ‘carried out pursuant to a plan embody *747 ing explicit, neutral limitations on the conduct of individual officers’ (id., at 51; cf., People v John BB., supra, at 485 [‘stops were conducted in a uniform, nonarbitrary and nondiscriminatory manner’])” (Matter of Muhammad F., 94NY2d 136, 148 [1999]).
Based upon the credible testimony, it is the finding of this court that the operation of the checkpoint was accomplished within the constitutional boundaries for this type of police action.
Specifically, the intrusion upon the privacy of the motorists approaching the checkpoint was minimal and the implementation of the checkpoint was done in accordance with a uniform procedure supervised by Sergeant Healy. The police officers under him were not allowed to exercise discretion. Adequate precautions were taken regarding safety, lighting and fair warning to the motorists as to the existence of a checkpoint. In this regard, the motorists were traveling on a well-lighted, three-lane roadway and were advised by a sign prior to the checkpoint that an accident was up ahead. Although the warning given to the motorists did not state that a checkpoint was ahead, it did provide adequate notice of police activity by indicating that there was an accident. This sign, together with the positioning of the police cars, would have eliminated any undue fear or fright that a motorist might have if the checkpoint were unmarked or the motorist was descended upon by police cruisers. The lack of surprise satisfies the concerns raised by the Court of Appeals in Matter of Muhammad (at 143, 144) pertaining to the “subjective intrusion” fear that unannounced police encounters might cause.
The three lanes were tunneled down to one, slowing traffic to a crawl, letting Sergeant Healy direct one out of every three cars off the roadway into a well-lit parking lot. The officers under Sergeant Healy’s supervision then performed the checkpoint inspections in accordance with his directions and in a manner that was consistent with the purpose for which the checkpoint was established.
Having determined that the stop of the defendant’s car was not in violation of his 4th Amendment rights, the court shall now address the defendant’s request for suppression. Based upon the credible evidence, the court finds that the defendant’s statement “[c]ome on man, I smoked earlier. I haven’t smoked in a while,” was not made in response to a direct question by the police officer, but was uttered by the defendant immediately *748 after he was told by the police officer that he was being arrested for driving under the influence of drugs. The officer’s statement was a declaration and cannot be reasonably interpreted as calling for a response from the defendant. (See, People v Porter, 251 AD2d 601 [2d Dept 1998]; People v McAdoo, 166 AD2d 674 [2d Dept 1990].)
The blood test refusal warnings were given and recited to the defendant in clear and unequivocal language emphasizing the consequences if the defendant persisted in refusing to take a blood test. The defendant’s refusal to submit to the test is admissible pursuant to section 1194 of the Vehicle and Traffic Law. Further, the defendant’s statement (“nobody is taking my blood”) was not in response to a direct question by the police officer but was part of the defendant’s refusal.
In regard to Police Officer Reiner’s observation of the marijuana cigarette on the console of the defendant’s car, it was in plain view during a valid vehicle checkpoint stop. This fact, in conjunction with the officer’s observations of the defendant opening and closing the console, the odor of marijuana coming from the car, and the defendant having trouble with his balance, were “additional relevant behavior or circumstances” that created probable cause to conclude that a crime was being committed. (See, People v Yancy, 86 NY2d 239, 246 [1995].) Hence, the warrantless search of the console by the officer was predicated upon facts and circumstances that established the requisite probable cause to support the warrantless search conducted.
Accordingly, all aspects of defendant’s motion which sought suppression are denied.