&em;The People of the State of New York, Respondent,
against
Ryan Mikalsen, Appellant.



Appeal from a judgment of the District Court of Suffolk County, First District (Karen M. Wilutis, J.), rendered April 2, 2014. The judgment convicted defendant, upon his plea of guilty, of driving while impaired. The appeal from the judgment brings up for review an order of the same court (Jennifer A. Henry, J.) denying, after a hearing, the branch of defendant's omnibus motion seeking to suppress evidence.




ORDERED that the judgment of conviction is affirmed.
On August 24, 2012, after defendant was stopped and arrested at a police checkpoint, the People charged defendant with driving while intoxicated (common law) (Vehicle and Traffic Law § 1192 [3]), failing to wear a seatbelt (Vehicle and Traffic Law § 1229 [d] [3]), and failing to comply with a lawful order or direction of a police officer regulating traffic (Vehicle and Traffic Law § 1102). After a hearing, the District Court (Jennifer A. Henry) denied defendant's motion to suppress all evidence obtained as the result of the stop. Defendant subsequently pleaded guilty to driving while impaired (Vehicle and Traffic Law § 1192 [1]). Defendant's sole contention on appeal is that his motion to suppress evidence should have been granted because the People failed to establish the constitutionality of the police checkpoint. For the reasons that follow, we affirm.
At the hearing, the People met their burden of establishing that the checkpoint had been created and operated in a manner "consistent with the Fourth Amendment and New York Constitution, article I, § 12" (People v Manahan, 23 Misc 3d 134[A], 2009 NY Slip Op 50802[U], *1 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2009]). The arresting officer testified that the checkpoint's location and the particulars as to the manner in which the checkpoint had been set up and operated had been determined by a superior officer who had been present during its operation (see Matter of Muhammad F., 94 NY2d 136, 144 [1999] [" (Proper) checkpoint operations both appear to and actually involve less discretionary enforcement activity. . . . The location of a fixed checkpoint is not chosen by officers in the field, but by officials responsible for making overall decisions as to the effective allocation of limited enforcement resources' "], quoting United States v Martinez-Fuerte, 428 US 543, 559 [1976]). Two marked police vehicles with activated emergency lights occupied a turning lane between single-lane roadways, one facing each direction of travel. The officers wore distinctive reflective clothing (see People v Pureco-Martinez, 46 Misc 3d 143[A], 2015 NY Slip Op 50182[U], *1 [App Term, 2d Dept, 9th & 10th Jud Dists 2015]) and employed hand signals and high-powered flashlights to alert oncoming motorists of their presence, thereby providing "adequate precautions as to safety, lighting and fair warning of the existence of the checkpoint" (People v Scott, 63 NY2d 518, 526 [1984]), and avoiding "the kind of fright or annoyance that invalidates a [checkpoint operation]" (id. at 527; see also Michigan Dept. of State Police v Sitz, 496 US 444, 452 [1990]). Every vehicle proceeding northbound or southbound was stopped (see e.g. City of Indianapolis v Edmond, 531 US 32, 39 [2000] [stop of every vehicle is nondiscriminatory]; Matter of Muhammad F., 94 NY2d at 146 ["Suspicionless stops . . . of all oncoming traffic at roadblock-t[*2]ype stops' to check driver license and registration are permissible"], quoting Delaware v Prouse, 440 US 648, 663 [1979]; see also People v John BB., 56 NY2d 482, 488 [1982]; People v Gavenda, 88 AD3d 1295, 1296 [2011]).
It was also the People's burden "to establish[] that the primary programmatic objective (not the subjective intent of the participating officers) for initiating a suspicionless vehicle stop procedure was not merely to further general crime control" (People v Jackson, 99 NY2d 125, 131-132 [2002] [emphasis in original]) but to further specific, legitimate law enforcement objectives. Among such permissible objectives is a concern for traffic safety (People v Edwards, 101 AD3d 1643, 1644 [2012] [checkpoint proper where police were looking for "registration, inspection, seat belt and other traffic related infractions"]; People v Dugan, 57 AD3d 300, 300 [2008] [same]; People v Burton, 8 AD3d 187, 188 [2004] [same]), and there is no reason on this record to doubt that this concern represented the "primary purpose" of the checkpoint here (Jackson, 99 NY2d at 129; see also Scott, 63 NY2d at 527 ["deterrence" a legitimate enforcement objective]; cf. People v Velez, 110 AD3d 449, 450 [2013]; People v Trotter, 28 AD3d 165, 169-170 [2006]). Finally, "there is no authority that expressly mandates the promulgation of [written] guidelines" for the arrangement and use of a checkpoint (Manahan, 23 Misc 3d 134[A], 2009 NY Slip Op 50802[U], *1; see also Michigan Dept. of State Police, 496 US at 453; People v Haskins, 86 AD3d 794, 796 [2011]; People v Sinzheimer, 15 AD3d 732, 734 [2005]), "the only requirement being that the procedure followed be uniform and not gratuitous or subject to individually discriminatory selection" (People v Serrano, 233 AD2d 170, 171 [1996]; see Pureco-Martinez, 46 Misc 3d 143[A], 2015 NY Slip Op 50182[U], *2 [same]).
In view of the foregoing, we find that the police checkpoint satisfied constitutional requirements. Accordingly, the judgment of conviction is affirmed.
Marano, P.J., and Garguilo, J., concur.
Decision Date: August 01, 2016